## 7539

### MILLS v. ATLANTIC COAST LINE R. R. CO.

1. RAILROADS—NEGLIGENCE—WILFULNESS.—Failure of the crew of a freight train running on the time of a passenger train to go into the siding ten minutes before passenger train due, or to throw out fusees in case it cannot be gotten into a siding as required by the rules, tends to show a conscious and reckless failure of the freight crew to observe due care.

2. WILFULNESS.—Where there is testimony warranting a verdict for punitive damages, the Court properly refused to direct a verdict, and the fact that the jury found a verdict for compensatory damages cannot affect such ruling.

3. MASTER AND SERVANT—NEGLIGENCE.—In suit by employee against employer for injury it is the rule that the employee is held to the rule of ordinary care under the circumstances to perform the duties imposed by rule and to avoid injury.

4. RAILROADS—NEGLIGENCE.—Under the evidence here tending to show the collision occurred sufficiently far from switch light for the engineer to have stopped his train before reaching it, it would have been error to instruct jury it was duty of engineer to stop if he did not observe the switch light without qualification if he could have seen it by proper care and diligence.

5. VERDICT.—This Court has no power to correct a verdict on ground of excessive amount, unless it is so grossly excessive as to authorize an inference that it is the result of prejudice or caprice.

6. RAILROADS—CONTRIBUTORY NEGLIGENCE.—Under evidence tending to show the engineer did not see signals which should have been displayed, which failure under the rules required him to slow down his train, it cannot be said as matter of law he was guilty of contributory negligence in not slowing down because there is testimony tending to

show as he was about to obey the rule he observed immediate danger. Effect of disobedience of rule by employee on his right to recover for injuries discussed.

Before HYDRICK, J., Charleston, March term, 1908. Affirmed.

Action by L. A. Mills against Atlantic Coast Line R. R. Company. From judgment for plaintiff, defendant appeals.

*Messrs. Willcox & Willcox, W. Huger Fitzsimons, T. Moultrie Mordecai* and *Henry E. Davis,* for appellant. *Messrs. Willcox & Willcox* and *Henry E. Davis* cite: *Plaintiff being guilty of contributory negligence, and no wilfulness being shown, verdict should have been directed for defendant:* 23 S. C., 531; 61 S. C., 484; 77 S. C., 328; 81 S. C., 100; 153 Fed., 56; 5 Rich., 17; 65 S. C., 440; 35 S. C., 389; 74 S. C., 102; 2 Hutch. on Car., sec. 990; 4 Elliott on R. R., sec. 1585; 74 S. C., 102; 6 Cyc., 605, 617; 157 Fed., 347; 20 So., 67; 57 N. W., 124; 3 Thomp. on Neg., sec. 2821; 3 Elliott on R. R., sec., 1282; 1 L. on M. & S., sec. 165, 165a; 70 Fed., 24; 118 Fed., 223; 19 S. W. 935; 88 N. W., 974; 16 S. E., 813; 12 So., 273; 53 N. E., 358; 10 S. E., 422; 62 N. W., 137; 72 Ill., 285; 31 Mich., 429; 51 Miss., 637; 95 N. W., 322, 892; 46 Atl., 937; 60 S. W., 2,643; 76 Ga., 527.

*Messrs. Legare, Holman & Baker,* contra, cite: *Servant is only required to exercise ordinary care to avoid injury:* 1 L. on M. & S., secs. 14, 15, 17.

April 8, 1910. The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. On the night of the 14th of August, 1906, plaintiff was in the employment of defendant

as engineer operating one of its fast express and passenger trains, No. 89, running from Charleston to Savannah. Approaching Hardeeville, S. C., which is a junctional point with the Southern Railway, and going forty miles an hour this train ran into the rear end of defendant's freight train occupying the main line. After reversing his engine plaintiff jumped from the same and in the fall received certain personal injuries alleged to be serious and permanent. This action was brought to recover damages alleging that the injuries resulted from defendant's negligence and recklessness in permitting the freight to occupy the main line on the schedule time of the passenger train without warning. Defendant made answer admitting the employment of plaintiff, the collision, the fact that some injury was sustained, but denied the negligence alleged, and alleged contributory negligence of plaintiff in failing to keep a proper lookout and to observe the warning lights upon the rear of the freight train and in failing to stop his engine before collision.

The jury rendered a verdict as follows: "We find for the plaintiff in the sum of eighteen thousand dollars as compensative damages," which the Circuit Court refused to disturb on the motion for new trial.

Appellant's first exception to the judgment entered is that a verdict should have been directed in favor of defendant, because there was no proof of wilfulness, and because the evidence was conclusive that plaintiff was guilty of contributory negligence in failing to observe the rules of the company especially rules Nos. 10, 27 and 98.

We think there was evidence of reckless disregard of duty by defendant in not protecting the rear of its freight train as required by the rules of the company. Under rule 86 the freight train should have been in the sidetrack clear ten minutes before the arrival of the passenger train, a superior train, and rule 99 provides: "When a train stops

or is delayed under circumtsances under which it may be overtaken by another train, the flagman must go back immediately with stop signals a sufficient distance to insure full protection.   When recalled he may return to his train, first placing two torpedoes on the road, and planting a lighted fusee on the track, when the conditions require it." Under rule 11 the engineer of train following should stop on seeing the fusee burning red and after it burned out proceed cautiously until the track is clear.   The flagman of the freight train testified that the freight engine at the time of the collision was moving slowly into the siding, the engine having just turned into the switch and the train was extending thirty-five box car lengths on the main line, that he knew the rules, that he knew the passenger train was following, that he should have thrown out a fusee one-half mile back, but that he did not light a fusee until the passenger train was right on them, and that the engineer of the passenger had no time to stop after the fusee was lighted, and he was standing on the ground with the lighted fusee in his hands at the time of the collision, that after investigation the crew of the freight train was discharged by defendant for neglect of duty.

The conductor of the freight train testified that his train was inferior to No. 89 and that he should have given No. 89 ten minutes' notice, and that he should have dropped fusees along the track, but did not do it, that he knew that No. 89 was coming behind and that the freight train was on the time of No. 89.   This witness also testified that he looked at his watch just after the collision, and it showed the time to be 2:44 a. m.   He also testified that there was a red lantern burning on the platform of the cab, and that the markers on side at rear end of cab were burning red. The plaintiff testified that his train was on schedule time, that he was due at Hardeeville station at 2:50; that the collision was about 2:48, that he was looking ahead and saw no lights on the cab and was not aware that the freight train

was on the main line until within seventy-five yards, when the headlight of his engine showed up the cab.

The foregoing testimony tends to show a conscious and reckless failure of the freight train crew to observe the care due under the circumstances.

This being so, it was not error to refuse to direct a verdict on either ground mentioned, since contributory negligence of plaintiff would not constitute a defense in the event the jury should conclude that defendant wilfully or recklessly disregarded its duty. It is true the verdict, being for compensatory damages only, excludes the idea that the injury was wilfully inflicted. *Doster* v. *Tel. Co.,* 77 S. C., 63, 57 S. E., 671. But on the motion to direct a verdict, the Court could not assume that such would be the finding.

It follows also that the second exception, which alleges error in refusing defendant's request to charge the jury that there was no evidence of wilfulness, cannot be sustained.

Defendant's seventh request to charge was as follows: 7. "The rules of the company provide, referring to rule 27, which is in evidence, that 'a signal imperfectly displayed, or the absence of a signal at a place where a signal is usually shown, must be regarded as a stop signal, and the fact reported to the superintendent.' If the jury should find that the danger signal at the switch was displayed, or that there was an absence of any signal at such point, where a signal should have been, it was the duty of the engineer to observe the signal so displayed, or stop, as required by the rule, if it was not displayed, and if his failure to do so contributed to the accident and his injury as a proximate cause he cannot recover."

The charge as requested was given with this qualification: "Provided you find as a fact that ordinary care and diligence on his part would have observed it."

Appellant contends that this was error because an engineer operating a passenger train is in duty bound to

exercise not merely ordinary care, but the highest degree of care to observe siignals.

Appellant's contention would be correct if this was a suit by a passenger against the carrier, in which case the rule of "highest degree of care" would apply to the agents of the carrier. This being a suit by an employee against the employer, the rule is that the employer must exercise ordinary care under the circumstances not to injure the employee by any breach of the employer's duty, and, reciprocally, the employee must exercise ordinary care under the circumstances to perform the duties of his employment and to avoid being injured.                                                 :

Furthermore, appellant contends, the charge was defective in not explaining whether it was the duty of the engineer to observe the switch signal, or absence of switch signal, and stop immediately upon such discovery, or whether it was the duty of the engineer on observing the signal, or absence of signal, to stop before passing the switch. In this case the freight train of thirty-five cars of thirty or thirty-five feet each in length, occupied the main line a probable distance of four hundred yards between the switch and the oncoming passenger train. According to plaintiff's testimony he discovered the presence of the train upon the track seventy-five yards distant.

Plaintiff was then at least a quarter of a mile from the switch, and according to his testimony he could have stopped his train within two hundred and fifty yards. He further testified that he saw no switch light, and knowing the rule, was about to shut off steam when he discovered the cab. Under such circumstances it would have been error to give the instruction requested without a qualification submitting to the jury whether plaintiff was negligent with respect to the observance of the rule in question.

In the case of *Louis etc Ry. Co.* v. *Dewees,* 153 Fed., 56, the engineer, Dewees, proceeded *all the way to the switch* at a speed of *fifty to sixty* miles an hour and struck a

freight train after passing the switch. In the case at bar the engineer reversed his engine in ample time to stop before reaching the switch, and struck an intervening freight train, which he claims not to have discovered in time to avoid the collision. On this theory of plaintiffs' case the failure to observe the presence or absence of the switch light earlier was not the proximate cause of the injury.

The remaining exception is to the refusal of the motion for new trial made upon the following grounds:

First—There is no evidence showing negligence of the defendant company as alleged in the complaint.

Second—The evidence shows that any injury received by Mills, the plaintiff herein, was caused by the plaintiff's own negligence in violating, among other rules of the company, rules Nos. 10, 27 and 89, in that plaintiff failed to run his train with caution, and failed to observe the signals of danger which were duly displayed, which acts of negligence of the plaintiff, L. A. Mills, contributed to the accident and to his injury, if any received, as a proximate cause thereof, without which said accident and injury would not have happened.

Third—The entire evidence shows that the accident and injury, if any, received by the plaintiff, Mills, were due to the negligence of the plaintiff, Mills, as the entire cause.

Fourth—There is no evidence showing that the plaintiff, Mills, was injured in the manner alleged in the complaint, or received and suffered from the injuries alleged in the complaint.

Fifth—The verdict is grossly excessive.

These specifications do not require any extensive notice unless it be the second. There was testimony of defendant's negligence or recklessness as alleged in the complaint, and that such negligence or recklessness was the proximate cause of the injuries alleged in the complaint. It cannot, therefore, be said that the injury resulted solely from the negligence of plaintiff. Whatever

may be our individual opinion as to the extent of the injuries received by the plaintiff, the question was one for the jury, and the Circuit Court has refused to disturb the verdict. It has been repeatedly determined that this Court has no power to correct a verdict on the ground that it is excessive unless it is so grossly excessive as to authorize an inference that it is the result of prejudice or caprice. We can not'.say that the verdict is excessive in that sense.

The second specification has given us most concern, since the verdict of the jury excludes wilfulness, in which case it becomes necessary to consider whether plaintiff was guilty of contributory negligence as matter of law.

Is is not error of law to refuse a new trial on this ground, unless the evidence is so conclusive that contributory negligence by plaintiff is the only reasonable inference of which the evidence is susceptible.

In refusing a new trial the Circuit Court, Judge Hydrick presiding, held: "In my view of the testimony plaintiff was guilty of contributory negligence in failing to observe the lights (which I believe were in the rear of the cab), and in failing to have his train under control while approaching a junction point and while running within the yard limits; and the defendant's agents and servants were guilty of recklessness and a conscious failure to observe due care for the protection of plaintiff's train, in being on the main line with the freight train on the time of his train without exercising the precautions required by the rules of the company. However, there was testimony and the want of testimony on the issue of contributory negligence upon which the jury might, especially if they believed the plaintiff's testimony, have acquitted the plaintiff of contributory negligence." We concur in this last view of the testimony. It appears that rule 10 of the defendant company provides that "a red signal or signals required an engineer to stop;" rule 27 provides: "a signal imperfectly displayed, or the

absence of a signal where a signal is usually shown, must be regarded as a stop signal, and the fact reported to the superintendent;" rule 98 provides: "that trains must approach the end of a double track, junction, railroad crossings and drawbridges prepared to stop unless switches and signals are right and the track is clear. Where required by law, trains must stop." It is undoubtedly the duty of the servant to render obedience to the rules of the master, which are reasonable, not abrogated or waived, promulgated for the safety of the servants and those affected by the operation of the master's business, known to the servant actually or constructively, when the servant is chargeable with notice of existence of conditions the rules were framed to meet, and when there exists no emergency or higher obligation which should excuse failure to obey.

I Labatt, Master and Servant, sec. 365; *Carson* v. *So. Ry. Co.*, 68 S. C., 55, 46 S. E., 525; *Wilson* v. *Ry. Co.*, 73 S. C., 481, 53 S. E., 639.

"It concerns the public safety that Courts should not sanction the attempts of employees of railroad companies to waive or disregard any of the rules adopted for the protection from injury of the employees themselves, as well as passengers." *Stephens* v. *Southern Ry.*, 82 S. C., 548. Disobedience of rules by a servant which, combined with the negligence of the master proximately causes him injury, will generally be held by the courts to be contributory negligence as matter of law. I Labbatt, sec. 365 *et seq,* and notes, 3 Elliott on R. R., sec. 1282, Beach on Contributory Neg., sec. 141, with numerous authorities cited in appellant's brief.

These salutary principles, however, do not require a reversal in this case. We have already shown with reference to the alleged failure of plaintiff to observe the presence or absence of the switch light, that plaintiff's testimony made an issue for the jury, as he claimed to have observed the absence of the switch light, and was preparing to obey

the rule in time, when the greater emergency arose which caused him to reverse his engine and jump for his life.

With respect to the red lights on the rear end of the freight train, while the freight train crew testified that the lights were burning, plaintiff testified that he was looking forward and saw no lights. Were those lights burning? If burning, were they too dimly burning to enable plaintiff, exercising due care, to observe them in time? Which is most probable, that the freight train crew should neglect to properly display the rear end lights, or that plaintiff should rush his train, loaded with human freight, into the obstructing train, if its warning lights were burning? These were matters for the jury, and the Circuit Court committed no error of law in refusing to set aside the verdict.

The judgment of the Circuit Court is affirmed.

MR. JUSTICE HYDRICK *did not sit in this case because disqualified.*