## 7191

### STEPHENS v. SOUTHERN RY.—CAROLINA DIVISION.

1. MASTER AND SERVANT—RAILROADS—CONTRIBUTORY NEGLIGENCE—ISSUES.—Where the evidence makes it doubtful whether an order issued by a superior servant to a servant who under the rules of the master is required to obey such superior servant is within the scope of the superior servant's authority, the issue should be sent to the jury, but where a fireman at the command of the engineman, whom he must obey, under the rules of the master, jumps from an engine moving six or seven miles an hour to get a cup of coffee for the engineman, he jumps at his peril and in so doing is guilty of contributory negligence. When servant may obey orders of his superior involving peril without being guilty of negligence considered.

2. IBID.—NEGLIGENCE.—Where the time a servant has had the rules of the master for study is not definitely stated, the Court cannot say as matter of law that he has had them long enough to justify an inference that he should have known them and that his failure to obey them should be imputed to him as negligence.

Before MEMMINGER, J., Dorchester, April, 1908. Affirmed.

Action by Thomas Stephens against Southern Railway, Carolina Division. From order of nonsuit, plaintiff appeals.

*Mr. E. J. Dennis* and *J. P. K. Bryan* for appellant.

*Mr. Bryan* cites: 68 S. C., 55; 73 S. C., 481; 205 U. S., 1; 3 Rich., 1; 67 S. C., 391; 78 S. C., 562; 66 S. C., 532; 79 S. C., 176; 80 S. C., 1.

*Mr. J. W. Barnwell,* contra, cites: 19 S. C., 20; 77 S. C., 328; 78 S. C., 374; 81 S. C., 193, 100; 70 S. C., 242; 73 S. C., 481; 22 Ind., 121; 22 Col., 363; 21 N. Y. Supp., 445; 153 Mass., 400; 12 C. C. A., 495; 47 Fed., 204; 71 Miss., 987; 41 S. C., 856; 37 W. Va., 524; 32 Con. Sup. Ct., 454; 95 Ga., 292; 111 N. C., 482; 105 Ky., 492; 29 Tex. Civ. App., 551; 88 Va., 648; 130 Mo., 657; 1 McM., 385.

May 11, 1902. The opinion of the Court was delivered by

MR. JUSTICE WOODS. This action was brought for damages on account of personal injuries suffered by the plaintiff while in defendant's employment as a fireman. The appeal is from an order of nonsuit made on the ground that the evidence admitted of no other inference than that the injury was due to plaintiff's own negligence or that his negligence contributed to it as a proximate cause. The facts may be shortly stated. Charles Alphonse was engineer and the plaintiff, fireman, on defendant's freight train which left Columbia about seven o'clock on the morning of 11th August, 1904. The claim of the plaintiff is, that his injury resulted from the negligence of the engineer in requiring him to jump from a moving train. His account of the order of the engineer and his own conduct and the resulting injury is best given in his own language: "A. Just before we got to the block, and while the train was running, he told me, 'Stephens, I am not going to eat any breakfast this morning, but I want you to get down and go back to the cab and get me a cup of coffee.' Q. Where was the cab? A. That was back behind the engine; there was nineteen freight cars and the cab back behind the engine. When we were first rolling up to the block station, I at first denied him; when he told me to go for the coffee we were running between six and seven miles an hour; I told him now directly I would go for him as soon as I fixed my fires. I grabbed my chain and shovel and gave her three shovels of coal and eased the blower on; he said: 'I want you to get my coffee—I don't want to lose any schedule on this train; I was a little late coming in yesterday.' I told him to wait till she stopped; he said, 'No, I want it now.' So I took the cup he handed me in my left hand, and started back on the fireman's side, and caught the hand-rod on the tender with my right hand and the cup in my left hand, with my feet on the step. As I was swinging out he put on his brake to the

emergency, and threw me over on the connecting-rod and I must have fallen under the engine. * * * * * A. I know that the engineer told me to jump off three times; he told me the third time to jump off three times before I did it. * * * * * Q. What did you tell Mr. Alphonse when he told you to get off the train? A. I denied him until the third time; I told him that I would get off when the train stopped. Q. Was the train going too fast? A. I can't tell whether it was going too fast or not. Q. You did not want to get off the train because you were afraid it might have done what it did to you? A. Of course. Q. You told Mr. Alphonse that you did not want to get off the train because it was going too fast? A. Yes, sir. Q. The engineer told you that you must get off? A. Yes, sir, he told me to get off and get the coffee for him."

These rules were introduced: 574. "In all matters pertaining to the Transportation Department, firemen will report to and receive instructions from the Superintendent and Train Master. In all matters pertaining to the Motive Power Department, they will report to and receive instructions from the Master Mechanic and Road Foreman of Engines. Within shop and engine-house limits they must obey the orders of the foreman. When with an engine they must obey the orders of the engineman.

Rule 11. "Every employee must exercise the utmost caution to avoid injury to himself or to his fellows, especially in the switching of cars and in all movements of trains, in which work each employee must look after and be responsible for his own safety. Jumping on or off trains or engines in motion, getting between cars in motion to couple or uncouple them, and all similar imprudences, are dangerous, and in violation of duty. All employees are warned that if they commit these imprudences it will be at their own peril and risk.

Rule 12. "Every employee is hereby warned that before exposing himself in, being on the track and grounds of the

company, or in working with or being in any manner on or with its cars, engines, machinery or tools; he must examine for his own safety the condition of all machinery, tools, tracks, cars, engines or whatever he may undertake to work upon or with before he makes use of or exposes himself on or with the same, so as to ascertain as far as he reasonably can, their condition and soundness; and he is required to promptly report either to the Superintendent or to the Agent who may be his immediate superior officer, any defect in any track, machinery, tools or property of the company, affecting the safety of any one in using or operating upon or with the same. The object of this rule is to protect employees from suffering personal injury from any cause, while the company will be responsible to each one for the discharge of all its duties and obligations to him, and for any fault and neglect of its own or of its Board of Directors or General Officers which are the approximate cause of the injury, yet it will not be responsible to him for the consequences of his own fault or neglect, or that of any other employees of the company, whether they, or any of them, are superior to him in authority as conductors, foremen, or otherwise; it being the right and duty of every employee, under all circumstances, to take sufficient time, before exposing himself, to make such examinations as are here required, and refuse to obey any order which will expose him to danger. Every case of personal injury must be promptly reported."

We inquire first, whether there was any negligence on the part of the engineer, imputable to the defendant as a proximate cause of the injury. The engineer had the right to direct or control the services of the fireman under the rules of the company, and, therefore, the railroad company would be liable for injury to the plaintiff, resulting from his negligence. *Pagan* v. *So. Ry. Co.*, 78 S. C., 413, 59 S. E., 32. It cannot be said, as a matter of law, that it is not negligence for the engineer to order a fireman to jump from an engine running at the rate of

six or seven miles an hour. The most that could have been claimed by the defendant as to that issue of fact would be that it should be submitted to the jury. The defendant contends, however, that if the negligence of the engineer be assumed, such negligence was not chargeable to his principal, the railroad company, because the order was not given in the course of his employment, but, on the contrary, was given as a means of supplying his own personal wants and purposes. From this proposition, the defendant would draw the conclusion that the plaintiff had no right to regard the order of Alphonse as an order issued in his capacity of engineer, and hence he cannot hold the defendant responsible for the resulting injury. An exact line of demarcation between that which is within and that which is without the scope of a servant's duty and authority can not be drawn accurately by the Courts when the rules of the master require in general terms that one servant shall command and the other obey. There is a twilight region, and when a case falls within it, the jury must say whether the command of one servant and the obedience of the other were within the scope of the employment.

In *Redding* v. *South Carolina R. R. Co.,* 3 S. C., 1, 8, the Court quoted with approval the saying of Lord Cranworth in *Marshall* v. *Stewart,* 33 Eng. L. & Eq., 7, "We must take a great latitude in saying what is being engaged in his employment." The case of *Redding* v. *R. R. Co.,* is cited with approval in *Polatty* v. *R. R. Co.,* 67 S. C., 391, 45 S. E., 932. It is true in all these cases, the Court had under consideration the scope of the servant's agency in dealing with the outside public, not with his co-employees. But the reason for applying the rule stated by Lord Cranworth is equally strong in a case like this. The engineer by the direction of the master is required to command the fireman in the promotion of the master's business. The fireman in his work for the master is, by the direction of the master, required to obey the engineer. Fine distinction on the part

of the engineer and fireman as to the scope of the engineer's authority would be highly prejudicial to the business of the common master, and are forbidden by the nature of the service. Where the evidence makes an issue of fact as to whether the order would or would not be within the scope of the engineer's authority, the issue should be submitted to the jury. "The question whether the injured person was acting in the course of his employment is for the jury, where the evidence is conflicting, or where a difference of opinion may reasonably be entertained with regard to the proper inference to be drawn from the testimony." 2 Labett's Master and Servant, Sec. 634; *Southern Ry. Co., v. Guyton* (Ala.), 25 So., 34; *Daly* v. *Am. Printing Co.* (Mass.), 26 N. E., 136; *Bennett v. Warren* (N. H.), 49 Atl., 105; *Dallemand* v. *Saalfeldt* (Ill.), 67 Am. St., 214. Yet where an order of an engineer is so plainly one relating to a personal matter and so unconnected with the common service that no reasonable man could suppose it to be within the scope of his authority as engineer, then the Court should hold as a matter of law that the fireman obeyed at his own peril. Here the order was to perform a personal service of very trivial nature, which no one could suppose essential to the prosecution of the engineer's service to the railroad. The engine was very near to the place where it would have to stop, and even if the coffee had been essential to the service of the engineer, the plaintiff knew he could get it in a few minutes with the train at a standstill. As a reasonable human being, the plaintiff was bound to know that it was a personal and not a railroad service required of him, that it was of small consequence even as a personal service, and yet required the taking of a great peril. Under these circumstances, the plaintiff can not be heard to say that the engineer issued the order under authority conferred on him by the railroad company. Under this view, the nonsuit must be sustained without respect to the question of contributory negligence. But even if the order had been within the

scope of the engineer's authority, the plaintiff would be precluded from recovery because of his contributory negligence.

On this point, we consider first, the effect of the rule of the company forbidding its employees to jump from a moving train. In *Carson* v. *So. Ry. Co.*, 68 S. C., 55, 46 S. E., 525, the Court refused to hold it to be contributory negligence as a matter of law for a brakeman to go between cars to couple them, in obedience to the order of the conductor, though a rule of the company forbade such a risk. The doctrine was reaffirmed in *Wilson* v. *Ry. Co.*, 73 S. C., 481, 53 S. E., 968. At the argument, defendant's counsel insisted on the distinction as vital, that in those cases the orders were given by the conductor, the recognized representative of the master in control of the train, while the engineer is a subordinate. While we are not inclined to review the cases of *Carson* v. *Ry. Co.*, and *Wilson* v. *Ry. Co.*, we are still less inclined to extend their application. It concerns the public safety that Courts should not sanction the attempts of employees of railroad companies to waive or disregard any of the rules adopted for the protection from injury of the employees themselves, as well as passengers. The rule that the fireman shall obey the engineman is manifestly limited by the other rule that the fireman shall refuse to obey an order which exposes him to known danger. Yet the rule which requires an employee to refuse to obey an order which exposes him to danger can not be taken literally, for the occupation is intrinsically one of peril, and obedience to orders absolutely necessary, for the conduct of the business involves a degree of danger. The true meaning of the rule is, that the employee must refuse to obey orders known to him to be dangerous beyond the peril to be regarded reasonably incident to his employment.

In this case, however, the plaintiff testified that while he had undertaken to read all the rules, he had not reached those forbidding employees to jump off moving cars, and

requiring them to disobey all orders which would expose them to danger. It appeared from the evidence that the rule book was given to the plaintiff some time in 1904, but it does not appear how long he had it before the accident in August of that year. The Court could not say as a matter of law that the time was long enough to justify the inference that the plaintiff should have known the rules. His ignorance of them, and consequent failure to obey them cannot as a matter of law be imputed to him as negligence. If he knew those rules of caution or could have known them by the exercise of reasonable diligence then he could not recover, because his act was in direct violation of them. But the Court could not decide this issue, because the evidence left room for more than one inference.

But aside from the company's rules of caution above mentioned, the plaintiff could not stupidly, recklessly, or even carelessly obey an order of the engineer requiring him to do an obviously dangerous act, and hold the defendant responsible for a resulting injury. For in doing so he would be guilty of contributory negligence.

The remaining inquiry is, whether the plaintiff's act was of this character. To show contributory negligence, it is not sufficient that the employee receiving the order should have misgivings, and believe the act required to be hazardous, unless the danger is so imminent and obvious that a man of ordinary prudence would not incur it. If there is ground for reasonable difference of opinion as to the danger, the servant is not bound to set up his judgment against that of his superior whose orders he is required to obey, but he may rely on the judgment of such superior. The matter is thus well stated by Mr. Justice Holmes in *McKee* v. *Tourtellotte,* 167 Mass., 68, 44 N. E., 1071, 1072: "When we say that a man appreciates a danger, we mean that he forms a judgment as to the future, and that his judgment is right.

But if against this judgment is set the judgment of a superior, one, to whom from the nature of the callings of the two men and of the superior's duty, seems likely to make the more accurate forecast, and if to this is added a command to go on with the work and to run the risk, it becomes a complex question of the particular circumstances, whether the inferior is not justified as a prudent man in surrendering his own opinion and obeying the command. The nature and degree of the danger, the extent of plaintiff's appreciation of it, and the exigency of the work, all enter into consideration, and no universal rule can be laid down." The numerous authorities sustaining this statement of the law are collated in the note in *Houston &c. Ry. Co.* v. *De Walt,* 97 Am. St., 877.

Whether it is negligence to jump from a slowly moving train is a question for the jury, and the Court will not hold it to be contributory negligence as a matter of law. To take the case from the jury, it must clearly appear that the train was going at such a high rate of speed that it was in fact obvious to the plaintiff or would have been obvious to any reasonable man that injury would probably result from jumping. *Creech* v. *Ry. Co.,* 66 S. C., 533, 45 S. E., 86; *Gyles* v. *Ry. Co.,* 79 S. C., 176, 60 S. E., 433; *Northern Pac. R. R. Co.* v. *Egeland,* 163 U. S., 93. In the last case, and in others decided on its authority, the fact that the plaintiff jumped at the direction of his superior was held to be an important consideration. Here it is true, the order was given by the engineer, but even regarding it within the scope of the engineer's authority, there was no emergency, and nothing of consequence to be accomplished; and the plaintiff testified that he regarded the jump from the train so dangerous that he twice refused to take the risk. There was in fact great peril in making the jump, full appreciation of the danger by the plaintiff, who had been in the railroad business a long time, and no exigency or emergency of any kind. On this point, the case falls under the case of *Smith*

*v. Ry. Co.,* 80 S. C., 1, where a demurrer was sustained on the ground that the plaintiff had alleged in the complaint that he jumped from a moving train when he knew the act was dangerous. There is no view of the law under which a verdict for the plaintiff could be sustained, and the nonsuit was properly granted.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.