7908

MURPHY v. ATLANTA & CHARLOTTE AIR LINE RY. CO.

1. MASTER AND SERVANT—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.—
There being no evidence that the brakeman in charge of the shifting crew had any reason to suspect that the conductor would be between the cars, it was not negligence in him to treat his instructions to shift on to track No. 2 first as not allowing him any discretion in the work, but even if there was evidence of negligence the plaintiff was guilty of contributory negligence in going between the cars which he knew might be struck by moving cars at any moment. *Divided Court.*

2. MESSRS. JUSTICES HYDRICK AND GARY *dissent:*

(a) APPEAL.—A respondent cannot object to the consideration of an exception to ruling out testimony on ground that the record does not show what the witness would have said, where the ruling was made on his objection.

(b) MASTER AND SERVANT—EVIDENCE—DECLARATIONS.—On the issue of injury from negligence of a fellow servant the declarations of the master as to the incompetency or carelessness of the offending servant previous to his employment on the work in question, is competent.

(c) IBID.—ISSUES.—In this case it could have been reasonably inferred from the evidence that the brakeman knew where the conductor was, that he was only temporarily absent, the issue of negligence should have been sent to the jury.

(d) IBID.—Where it appears the offending servant was incompetent and that his incompetency was known or ought to have been known to the master and that his incompetency was the proximate cause of injury to another servant, a *prima facie* case of liability is made out against the master.

(e) IBID.—EVIDENCE.—On the issue of incompetency of a fellow servant, that he was so several years before the employment in issue, is competent.

Before ALDRICH, J., Greenville, November term, 1909. Affirmed.

Action by J. P. Murphy against Atlanta and Charlotte Air Line Railway. Plaintiff appeals.

*Mr. Jos. A. McCullough,* for appellant, cites: *Duty of master to furnish safe place includes a place to attend to call of nature:* 34 Am. St. R. 125; 59 S. E. 1072; 69 S. C. 387. *Appellant had the right to suppose Corn would obey his instructions:* 81 S. C. 203; 45 S. W. 563. *To make an act wrongful it is not necessary that party should know in all probability injury would result:* 66 S. C. 307; 52 S. C. 337. *Corn was negligent in not obeying instructions:* 54 S. C. 504; 76 S. C. 202; 4 L. R. A. 420; 84 Fed. 596; 63 S. W. 164; 116 Fed. 868; 45 S. E. 570. *Whether Corn should have known where appellant was should have been sent to the jury:* 59 S. E. 1005; 78 S. C. 62. *Fellow servant doctrine does not apply:* 71 S. C. 56. *Declarations of master previously as to incompetency of servant competent:* 63 S. C. 566; 1 L. M. & S., secs. 194, 189; 12 Ency. 1023; 28 S. C. 159; 56 S. C. 145; 65 S. C. 300; 72 S. C. 125; 81 S. C. 448.

*Messrs. Cothran, Dean & Cothran,* contra, cite: *Appellant's injury was the negligence of a fellow servant:* 12 Ency. 1002; 3 Bat. 426; 11 Ohio St. 417; 18 Ind. 226; 85 Am. D. 409; 8 Kan. 642; 29 Kan. 632; 3 Cush. 270; 46 Mich. 258; 54 Am. D. 348; 60 Miss. 977; 59 Mo. 285; 17 N. Y. 153; 17 Ohio St. 197; 80 Am. D. 467; 46 Tex. 540; 70 Tex. 226; 61 Wis. 163; 13 Am. Neg. Ca. 328. *Competency of servant must be determined as of the time in issue:* 1 Lab. 398; 1 S. W. R. 500; 35 Mo. App. 661; 12 Ency. 920. *Declarations of master as to incompetency of servant before employment in question cannot be considered unless the answer appears in the record:* 43 S. C. 91; 47 S. C. 78; 51 S. C. 37; 43 S. C. 70; 7 S. E. 860; 4 Grat. 270; 43 L. R. A. 185; 22 S. E. 349; 36 L. R. A. 271; 25 S. E. 582; 28 S. E. 249, 434, 594; 29 S. E. 694; 23 S. E. 758; 31 S. E. 899; 39 S. E. 174; 38 S. E. 183; 46 S. E. 217; 2 Cyc. 697.

May 11, 1911. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. On September 11, 1907, plaintiff was a yard conductor in defendant's employ at Greenville. It was his duty, with the aid of a switching crew, to make up trains. There were four sidetracks connecting the main line and what is called the lead track. These were numbered 1, 2, 3, 4, counting from the main line toward the lead track. The train, being made up, stood on the lead track, and the cars were being placed in the sidetracks for the purpose of assembling them according to their destination, and so arranging them in the train. Seven or eight cars had been placed on No. 3, and some on No. 2. There were none on Nos. 1 and 4. Plaintiff was on the lead track, and had cut loose some cars from the train, preparatory to placing them on the sidetracks, but, having a call of nature, he handed his switch list to the head brakeman, C. K. Corn, the man next under him in authority, and told him to switch the cars for track No. 2 to that track first, and then switch those for No. 3 to that track. Having given these orders, he proceeded across track 4 and was climbing over the bumpers between two cars, about midway the seven or eight standing on track No. 3, when they were struck by cars which were run in on that track, and plaintiff was knocked down and his leg was run over and crushed, so that it had to be cut off. Plaintiff's purpose was to get between tracks 2 and 3, where he would be hid from view by the cars on those two tracks. That was the nearest and most convenient place for him to get out of sight of people passing along the main line. The nearest privy was something over a quarter of a mile away. By walking the length of three or four cars he could have gone around the cars instead of climbing over the bumpers between them. He said, however, that he thought it perfectly safe to go between them, because he expected Corn to obey his instructions

and switch the cars for No. 2 to that track first; and, if he had done so, it would have been safe and he would not have been hurt.  He said, also, that was the proper way for the switching to be done.

Plaintiff proved that Corn had been discharged from the service of the company twice—in March and October, 1903,—for carelessness, and that he had the reputation of being careless.  He proved also, by F. C. Worley, a former general yardmaster, that, some time in 1904, he was short of hands and wanted to employ Corn; that his superior officer objected to his doing so, and he carried the matter to the trainmaster, who had authority over him in such matters; that he, too, disapproved of his employing Corn. Upon objection of defendant's attorneys, the Court refused to allow Worley to state the reasons given by the trainmaster for his disapproval.  This witness also said that Corn had the reputation of being a dangerous man when drunk, but all right when sober.

The specifications of negligence are: 1. In backing the cars on track No. 3 first, contrary to plaintiff's instructions. 2. In backing the cars on tract No. 3, without warning or signal to plaintiff.  3. In employing an incompetent fellow servant.  4. In failing to provide a suitable privy.  At the close of plaintiff's testimony, defendant moved for a nonsuit on the following grounds: "1. There is no testimony tending to establish the negligence alleged in the complaint as the proximate cause of plaintiff's injury.  2. The evidence shows that the cause of plaintiff's injury was his own negligence.  3. The evidence shows that the cause of plaintiff's injury was the negligence of a fellow servant.  4. The evidence shows that plaintiff's injury was due to his own contributory negligence.  5. The evidence fails to show that plaintiff's injury was due to the actionable negligence of the defendant."  The Court granted the motion, holding: 1. That there was no evidence of negligence, because there was no evidence that Corn knew or had any reason to believe that

his changing the order of shifting the cars on tracks 2 and 3 would probably result in injury to any one.    2. That, if there was, it was the negligence of a fellow servant, for which the master was not liable.    3. That the evidence as to the incompetency of Corn related to his discharge from the service of the company six years ago; but that he was afterwards employed, and there was no evidence of any complaint after the last employment; furthermore, that plaintiff's witness had testified that he was competent when he was sober, and there was no evidence that he was drunk on the occasion in question.    4. That plaintiff was guilty of contributory negligence in going between the cars on track No. 3, when he knew that cars were likely to be backed in on that track at any moment, and because plaintiff said he could have seen the engine and cars coming in on that track, if he had looked, but that he did not look.

The first assignment of error is in refusing to allow the witness, Worley, to say what reasons were assigned by defendant's trainmaster for his refusing to allow him to employ Corn. The contention of respondent that this exception cannot avail appellant, because it does not appear what the witness would have said, is untenable, because, on respondent's objection, the Court would not allow him to say anything as to the reasons assigned. The master owes a duty to each of his servants to exercise reasonable care in the selection of all other servants for their mutual protection. If he fails to discharge that duty, and a servant is injured as a proximate result, the master is liable, unless the injured servant waived his right to hold the master liable by continuing in the service after knowledge of the failure. Where the master is charged with negligence in the employment of an incompetent servant, the inquiry whether the master knew or ought, from the circumstances, to have known of the servant's incompetency is one of vital importance. It was,

therefore, relevant to the issue to show that defendant knew, through its trainmaster, the person who had authority to employ him, of Corn's incompetency, or of his reputation for carelessness; and the declaration of the trainmaster was competent to prove the fact, first, because it showed knowledge on the part of the company; and, second, because the declaration was made in the act of refusing him employment; it was, therefore, made within the scope of the trainmaster's authority, gave character to his act, and was admissible as part of the *res gestae. State v. McDaniel,* 68 S. C. 304, 47 S. E. 384.

The most important question, however, is, whether there was any evidence tending to prove the specifications of negligence alleged. For it matters not what Corn's reputation was and had been, if he was careful on the (c) occasion in question. So the real question is: Could more than one inference have been drawn from the testimony as to Corn's conduct on this occasion? If so, then the question should have been submitted to the jury. It would not be proper to intimate any opinion as to what the proper inference should be, for that is exclusively the province of the jury; but clearly the evidence is such that more than one inference can be reasonably drawn from it, and, therefore, the jury should have been allowed to say what the proper inference was. In *Trimmier v. Ry. Co.,* 81 S. C. 203, 62 S. E. 209, Allison, a freight conductor, carried his train into the yard at Spartanburg. He heard orders given that a certain train in the yard should be placed on track No. 4. In the discharge of his duties he was either standing or walking on track No. 1, when he was struck and killed by the train, which, according to the orders given, should have been switched to track No. 4. The Court held that the question of negligence was properly submitted to the jury. In this case it may have been reasonably inferred from the testimony that Corn knew where plaintiff was going and for what purpose; at any

rate, that he knew that plaintiff was only temporarily absent and that he was somewhere on the yard. Therefore, in view of the circumstances and of the instructions given Corn by the plaintiff, it should have been left to the jury to say whether plaintiff had the right to assume that his orders would be obeyed and that the cars would be placed on track No. 2 before any were placed on track No. 3; and, therefore, whether he had a right to assume that it would be safe for him to climb over the bumpers between the cars on track No. 3; in other words, whether plaintiff and Corn acted as ordinarily prudent persons would have acted under the circumstances. It is not necessary that Corn should have reasonably foreseen the consequences of his act. *Bodie* v. *Ry.*, 66 S. C. 302, 44 S. E. 943; *Pickens* v. *Ry.*, 54 S. C. 503, 32 S. E. 567; *Harrison* v. *Berkeley*, 1 Strob., 503.

This being so, the next question is whether, if Corn was guilty of negligence, his relation to plaintiff was such as to prevent a recovery on the ground that plaintiff was injured by the negligence of a fellow servant. When it (d) appears that the offending servant was incompetent, and that his incompetency was known, or ought, by the exercise of due diligence, to have been known to the master, and that his incompetency was the proximate cause of injury to another servant, a *prima facie* case of liabilty is made out against the master. In *Hicks* v. *Ry.*, 63 S. C. 559, 575, 41 S. E. 753, the Court said: "We see no reason why it should not be *prima face* evidence of negligence to employ an incompetent servant as well as to furnish defective machinery. Nor do we see why a servant should be held to assume the risk of negligence on the part of an incompetent fellow servant when he does not assume the risk arising from defective machinery, especially since it has been decided that the word appliances includes the persons necessary to operate the machinery." Whether Corn was in fact incompetent, and, if so, whether his

incompetency was the proximate cause of plaintiff's injury, were questions which should have been left to the jury.

But it is argued that Corn's reputation in 1903 and 1904 ought not to have been admitted upon the question of his competency in 1907, three years later. Why not? The testimony was competent. Its weight and sufficiency was for the jury, not the Court. Moreover, (e) the plaintiff did not confine his testimony to Corn's reputation in 1903 and 1904, but said generally that he had the reputation of being careless, without saying to what particular time he referred. The testimony was, therefore, competent, and it was for the jury to say to what time the plaintiff referred; and even if they found that he referred to his reputation in 1903 and 1904, still it was for them to say what weight it should have.

MR. JUSTICE GARY *concurs.*

MR. CHIEF JUSTICE JONES *favors affirmance for the reasons stated by the Circuit Court in granting nonsuit, and because there was no prejudicial error in ruling as to admissibility of testimony.*

MR. JUSTICE WOODS. Under the facts set out in the opinion of Mr. Justice Hydrick, I think the judgment of nonsuit was proper for these reasons:

First. There was no evidence whatever that Corn, plaintiff's subordinate, had any reason whatever to even suspect that the plaintiff or any one else would be between the cars on track No. 3, or that any injury would result from running the cars on that track, and it was, therefore, not negligence toward the plaintiff, or any one choosing to take a position between the cars, for Corn, who was temporarily in charge of the train, to treat the instruction to enter track No. 2 first and track No. 3

afterwards as a direction allowing him discretion in handling the cars.

According to the well established rule as to negligence and proximate cause the test was whether by the exercise of ordinary care Corn ought to have foreseen that any injury might reasonably be anticipated from his act of backing the train on track No. 3. *Harrison* v. *Berkeley,* 1 Strob. 550; *Mack* v. *South Bound R. R. Co.,* 52 S. C. 323, 29 S. E. 905, 40 L. R. A. 679; *Hale* v. *Cola. etc. Ry.,* 34 S. C. 293, 13 S. E. 537, 29 Cyc. 495. There are vital differences between this case and *Trimmier* v. *Atlanta & C. A. L. Ry.,* 81 S. C. 203, 62 S. E. 209. In that case there was evidence of a switch negligently left open, and the backing of the cars on a track where the conductor, Allison, was walking in the discharge of his duty, with his back to the car that ran on him. Those in charge of shifting cars always have reason to suspect that other employees may be on or near the tracks in the yards of a railroad company, and for that reason must be on the lookout for such persons. So it was held in that case that there was some evidence of negligence to go to the jury. On the contrary, in this case there was no reason whatever for Corn to suppose that Murphy or any one else was between the cars. Surely it cannot be that a railroad company, before moving its cars, must be on the lookout for persons who choose to go between its cars entirely out of sight of its employees operating the train. This conclusion, that there was no negligence on the part of Corn, makes testimony as to its competency irrelevant.

Second. Even if negligence towards the plaintiff could be attributed to Corn, the evidence admitted of no other inference than that the plaintiff was guilty of contributory negligence, in that he undertook to cross between the cars on track No. 3, knowing that they were likely to be struck and moved by other cars at any moment, and did not look nor take any other precaution for his own safety. Accord-

ing to the plaintiff's own testimony, if he had looked he could not have failed to see the approaching cars.

The Court being equally divided, the judgment of this Court is that the judgment of the Circuit Court be affirmed.