8700

STONE v. ATLANTIC COAST LINE R. R. CO.

1. RAILROADS—MASTER AND SERVANT—BLUE FLAG RULE—CONTRIBUTORY NEGLIGENCE.—A car repairer, who, upon request of a conductor of a shifting engine in a railroad yard, takes down his blue flag from the car he was working on to let cars on that track be shifted, and sits on the end of a crosstie on the next track under a box car without giving notice of his position and without putting up a blue flag, is guilty of contributory negligence, and if injured by the negligence of the company in shifting cars on that track, cannot recover. That he went under the car to make up his record out of the rain is no valid excuse.

2. IBID.—IBID.—NEGLIGENCE.—Whether the railroad company was guilty of negligence in employing an incompetent engineer and conductor, does not affect it, as they owed the repairer under the circumstances no duty.

Before GAGE, J., Richland, December, 1912. Reversed.

Action by Roberta C. Stone against Atlantic Coast Line Railroad Company, Tindal and J. C. McDaniel. Defendants appeal.

*Messrs. Barron, Moore, Barron & McKay,* for appellants, cite: *Leading questions:* Jones on Ev., secs. 372, 381; 85 S. C. 103. *Declarations of servant as to negligence after accident is not binding on master:* Jones on Ev., sec. 164; 1 Labatt 416, 192-3; 3 Elliott, sec. 1292; 107 U. S. 454. *Stone was guilty of contributory negligence:* 77 S. E. 869; 89 S. C. 23; 85 S. C. 471; 70 S. C. 242; 82 S. C. 548; 20 Ency. 105; 85 S. C. 525; 1 Labatt, sec. 365; 53 So. 550; 19 S. W. 936; 125 S. W. 530; 103 S. W. 424; 92 S. C. 562; 63 S. C. 271; 8 Am. St. R. 804; 77 S. C. 328. *Charge as to what act is negligence is on the facts:* 54 S. C. 498; 84 S. C. 568; 83 S. C. 328; 76 S. C. 63; 63 S. C. 494; 91 S. C. 201; 92 S. C. 490; 77 S. E. 1117. *Court should not consider an element of damages to justify a verdict which jury should not consider:* 13 Cyc. 80-1; 1 LeAg., secs. 229, 234; 12 Rich. 290; 39 S. C. 465.

*Messrs. Frank G. Tompkins, J. M. Wise* and *W. Hampton Cobb,* contra, cite: *Court may give an attorney the right to ask a witness called by him leading questions:* McKelvey on Ev., sec. 238; 53 S. C. 533; 46 S. C. 104. *Incompetency of servant may be shown by subsequent acts:* Labatt, secs. 188-202; 17 Am. Rep. 322-5; 41 L. R. A. 33-153; 19 S. C. 510; 89 S. C. 15. *Deceased not guilty of contributory negligence:* 89 S. C. 525; 92 S. C. 528; 93 S. C. 263; 94 S. C. 324. *Giving an erroneous statement of facts to sustain a verdict will not warrant setting it aside:* 81 S. C. 214; 75 S. C. 162-70.

December 15, 1913. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. Plaintiff recovered judgment against the defendants for twenty thousand dollars damages for the death of her intestate, Samuel B. Stone, which is alleged to have been caused by the joint and concurrent negligence of the defendants. Stone was a car repairer, working in the yard and under the rules of the defendant railroad company, though he was working for another railroad company.

Rules 26 and 989, under which Stone was working, read as follows:

"Rule 26. A blue flag by day and a blue light by night, displayed at one or both ends of an engine, car or train, indicates that workmen are under or about it; when thus protected, it must not be coupled to or moved. Workmen will display the blue signals and the same workmen are alone authorized to remove them. Other cars must not be placed on the same track so as to intercept the view of the blue signals, without first notifying the workmen."

"Rule 989. They will make no inspection or repairs to cars, either in trains or where liable to be moved, except under the protection of the signal prescribed in rule No. 26."

On the day of the accident, Stone and his helper, Futch, were working under a car on track 4, and were protected by a blue flag, when the defendant, McDaniel, the yard conductor, who was making up a train, came to them and asked them to take down their flag so that he could come in on that track and get some cars.

Stone sent his helper to take down the flag, and Futch and McDaniel went off together, leaving Stone between tracks 4 and 5. After Futch and McDaniel had gone some distance between tracks 4 and 5, McDaniel crossed track 5 to give some signals to his coupler and engineer, the defendant, Tindal. About that time, Futch saw a train of cars backing in on track 5, and, as he said was his custom, he

looked back to see where his partner was. As he did so, he saw Stone sitting on the end of a crosstie under a box car on track 5. Before he could warn him of his danger, the car was struck and shoved back, and a grease box struck him and broke his back. He died of the injury a few days afterwards. The engineer was on the engine about ten cars distant from the one under which Stone was sitting. The coupling was made by signals given to the engineer by the yard conductor. There were two switch engines at work on the yard nearly all the time, and employees on the yard knew that any car not protected by a blue flag was liable to be coupled to or moved at any time. It was raining on the day of the accident, and, as it was Stone's duty to keep a record of the numbers of the cars repaired by him, as well as of the repairs made on each, it was supposed that he went under the car on track 5 to get out of the rain, either to make entries in his book, or to look over his "bad orders;" that is, the list of cars to be repaired. The car that Stone was under was about the fifth from the one that was coupled to, and there was testimony tending to prove that if the coupling had been made with proper care that car would not have been moved.

The specifications of negligence in the complaint are as follows:

(a) "In carelessly and negligently causing and permitting the locomotive engine, with the cars attached thereto, to be brought in contact with the train of cars standing on track 5, with such great and unnecessary force and violence as was calculated to injure the plaintiff's intestate and other persons in and about the said track in pursuit of their daily labor.

(b) "In failing to notify plaintiff's intestate that the defendants intended to move the cars near which he was standing, after the defendant, McDaniel, had given him such

notice as was calculated to make him think the car was com-
ing in on track 4.

(c) "In failing to give the plaintiff's intestate notice that
the defendants were bringing an engine in on track 5, when
they knew, or should have known, that he did not expect
the train to come in on that track at that time, and when the
said defendant, McDaniel, knew that he was engaged in
work at or near the point which would be moved and made
perilous to him by the entry of said cars.

(d) "In that they ran the said switch engine and train of
cars attached thereto at a reckless and negligent rate of
speed while bringing the same on track 5 to connect it with
the cars standing on the said track.

(e) "In that they backed the train of cars into the said
track without any person on the back end of the same to
warn employees and other persons properly on the premises
of the approach of danger.

(f) "In that they backed the said train of cars along the
said track without any one on the end of same to warn
employees and others rightfully there of the approach of
danger, as by the rules and regulations of the road they
were required to do, and the deceased was led to believe that
he would receive such protection.

(g) "That the engineer, the defendant ———— Tindal,
was an incompetent person and unable, in fact, to properly
and carefully run the said engine with due regard to the
safety of others, which unfitness caused him to make the
connection with the cars with such force and violence as
to injure the plaintiff's intestate, all of which unfitness was
known to, or should have been known to, the defendant,
Atlantic Coast Line Railroad Company."

From the view which we take of the case, it will be neces-
sary to consider only the assignment of error in the refusal
of the motion of the defendants for the direction of the ver-

dict in their favor on the ground that there was no evidence of actionable negligence on the part of the defendants, and that, if there was, plaintiff was guilty of contributory negligence in going under the car, under the circumstances stated.

We cannot resist the conclusion that the motion should have been granted. The law which denies to a servant the right to hold his master liable for the injury directly resulting from his own violation of the rules of the master is founded not only upon sound policy, but also upon the plainest dictates of reason and justice. 1 Labatt M. & S., sec. 365; 3 Elliott on Railroads, sec. 1282; Beach Con. Neg., sec. 141; 20 A. & E. Enc. L. (2) 105; 26 Cyc. 1267.

In *Stephens* v. *Ry.*, 82 S. C. 542, 64 S. E. 601, this Court said: "It concerns the public safety that Courts should not sanction the attempts of employees of railroad companies to waive or disregard any of the rules adopted for the protection from injury of the employees themselves, as well as passengers." And, again, in the same case, the Court said: "If he (Stephens) knew those rules of caution or could have known them by the exercise of reasonable diligence, then he could not recover, because his act was in direct violation of them."

In *Mills* v. *R. Co.*, 85 S. C. 471, 67 S. E. 565, the Court reaffirmed the principle above quoted from the Stephens case and said: "It is undoubtedly the duty of the servant to render obedience to the rules of the master, which are reasonable, not abrogated or waived, promulgated for the safety of the servants and those affected by the operation of the master's business, known to the servant actually or constructively, when the servant is chargeable with notice of existence of conditions the rules were framed to meet, and when there exists no emergency or higher obligation which should excuse failure to obey."

In *Pickney* v. *R. Co.*, 89 S. C. 527, 72 S. E. 394, the Court said: "The case turns mainly on whether the evidence offered by the plaintiff proved conclusively that he had been guilty of contributory negligence in disregarding the rule of the company requiring a car repairer working under a car to protect himself by a blue flag. If the plaintiff proved that he did disregard such a rule, known to him to be in force and so essential to his own safety as well as the safety of other employees and the general public, when he could have complied with it by reasonable effort on his part, and thus prevented the injury, then the nonsuit was proper. *Stephens* v. *R. Co.*, 82 S. C. 542, 64 S. E. 601." The nonsuit was set aside, however, on the ground that it did not conclusively appear that blue flags were not used on the occasion when plaintiff was injured, and because the trial Court excluded evidence as to the condition of the flags which had been furnished him. Plaintiff offered to prove that they had been broken and destroyed by being run over by the engines and cars while shifting was being done in the yard where he was at work, so that he could not comply with the rule. This Court said that it was error to exclude such testimony, because it might have appeared that the flags were so broken as to be useless, and that plaintiff had been unable to procure others.

On the second trial, a verdict for the plaintiff was sustained, and the refusal of the Circuit Court to grant a nonsuit or direct a verdict for defendant, on the ground that plaintiff's injury resulted from his violation of the blue flag rule, was affirmed because there was testimony tending to show that plaintiff was ordered by a representative of the master to go under a car and make repairs, notwithstanding he knew that plaintiff had no blue flags to display,—those that had been furnished having been broken up, as above stated, which fact had been reported to him by the plaintiff, and requisition had been made upon him for others. It was

also stated in the opinion of the majority of the Court, as a circumstance affording an additional reason for sustaining the ruling, that when plaintiff went to work under the car there was only one engine in the yard, and plaintiff went to the conductor of the train to which it was attached and told him he was going under the car to work, and that he did so in reliance upon the assurance of the conductor that he was not going to do any more shifting, but was then about to leave for Augusta.   Two of the Justices were of the opinion, however, that "the plaintiff could not excuse his disregard of the rule on the ground that he chose to adopt the substitute of telling the conductor of the train that he was going under the car, and getting his promise not to run on him."   92 S. C. 528.

In *Bouchillon* v. *Ry.,* 90 S. C. 42, 72 S. E. 634, Bouchillon, the engineer of a hoisting engine attached to a work train, left his place in the shanty car and got upon the locomotive, in violation of a rule of the company.   The engine was derailed and he was killed.   This Court sustained a nonsuit on the ground that he was guilty of contributory negligence, as a matter of law, in violating the rule of the company, there being no call of duty or necessity, or direction from a superior officer or agent to do so.   The Court further held that in the absence of the rule forbidding employees to ride on the locomotive, he was guilty of contributory negligence, as a matter of law, which barred recovery, because he voluntarily left a safe place and put himself in one of obviously greater danger, it appearing that if he had not done so, he would not have been injured.

So, in this case, there is no testimony tending to excuse the violation of the rule.   There is not a particle of testimony that the conductor or engineer or any one else knew that Stone had gone under the car on track 5, even if that could be accepted as a sufficient excuse; nor is there any testimony tending to prove any satisfactory reason for

his having done so.   It is argued that he did it to get out of the rain in order that he might read over his list of "bad orders," or cars to be repaired, or make entries in his books of repairs that he had already made.   At best, that is only speculation and conjecture.   But, even if it were proved that such was his purpose, it would not excuse his violating the rule.   It would be a mockery of justice to say that the master must make, promulgate and enforce rules for the safety of his servant, and allow the servants to set them at naught upon such a flimsy pretext, and hold the master liable for injuries resulting therefrom.   Even if Stone's reason for going under the car was as supposed, it was entirely insufficient to justify his violation of so important a rule, and one whose violation was fraught with so much danger to himself.   It is argued, however, that when McDaniel, the conductor, asked him to take down his blue flag, saying that he wanted to come in on track 4 with the engine to get some cars, Stone inferred that he would come in on track 4 immediately; that is before going on track 5. The only witnesses who testified to what the conductor said were Futch, Stone's helper, and the conductor himself. Futch testified that the conductor told him he wanted to come in on track 4, but did not tell them when.   McDaniel said he told them he wanted to come in on that track in a few minutes, and to get their blue flag down.   Without conceding that the facts warranted the supposed inference, it was not sufficient to justify the violation of the rule, which was made to prevent just such mistakes and misunderstandings.

The case of *Murphy* v. *Ry.*, 89 S. C. 15, 71 S. E. 296, is directly in point.   In that case, Murphy, the yard conductor, gave his switch list to Corn, head breakman and next in charge, and told him to switch the cars for track 2 into that track first, and then to switch those for track 3 into the track.   After giving these orders, he undertook to cross

track 3 by climbing between certain cars standing on that track. While he was between the cars they were struck by a car which Corn shifted into that track before shifting the cars for track 2 into that track, and Murphy was injured. It was held that Corn was not guilty of negligence in exercising his discretion as to the order of putting the cars on several tracks and in thereby disobeying the instructions of Murphy, because there was no evidence that he had any reason to suspect that Murphy or any one else would be between the cars on track 3. Mr. Justice Woods said: "According to the well established rule as to negligence and proximate cause, the test was whether, by the exercise of ordinary care, Corn ought to have foreseen that any injury might reasonably be anticipated from his act of backing the train on track No. 3 (citing authorities). There are vital differences between this case and *Trimmier* v. *Atlanta & C. A. L. Ry.*, 81 S. C. 203, 62 S. E. 209. In that case there was evidence of a switch negligently left open, and the backing of the cars on a track where the conductor, Allison, was walking in the discharge of his duty, with his back to the car that ran on him. Those in charge of shifting cars always have reason to suspect that other employees may be on or near the tracks in the yards of a railroad company, and, for that reason, must be on the lookout for such persons. So it was held in that case that there was some evidence of negligence to go to the jury. On the contrary, in this case there was no reason whatever for Corn to suppose that Murphy or anyone else was between the cars. Surely it cannot be that a railroad company, before moving its cars, must be on the lookout for persons who choose to go between its cars, entirely out of sight of its employees operating the train." It was also held that Murphy was guilty of contributory negligence, as matter of law, in going between the cars. The facts of the present case are even stronger than those of the Murphy case, in support of the

contention that Stone was guilty of contributory negligence in going under the car.

We think also that the testimony fails to show any actionable negligence on the part of the defendants or any of them. The only negligence charged against the railroad company is that of McDaniel, the conductor, and Tindal, the engineer. To be sure, the company is charged with negligence in employing Tindal, on the ground that he was incompetent. But, if Tindal himself was not guilty of any actionable negligence, it goes without saying that it makes no difference whether he was competent or not.

Actionable negligence connotes the idea of a duty to exercise care. The converse of the proposition must be true, that, if there is no legal duty to take care, there is no actionable negligence. Judge Thompson states the principle thus: "An essential ingredient in any conception of negligence is that it involves the *violation of a legal duty,* which one person owes to another,—the duty to take care, for the safety of the person or property of the other; and the converse proposition is that where there is no legal duty to exercise care, there can be no actionable negligence. Therefore, it is reasoned that a plaintiff who grounds his action upon the negligence of the defendant, must show not only that the conduct of the defendant was negligent, but also that it was a violation of some duty which the defendant owed to him." 1 Thomp. Neg., sec. 3. The same principle is laid down in 29 Cyc. 419, and, at page 426, in discussing the requisites of the duty, the author says: "The duty must be owing to the person injured, and must be in respect of the very matter or act charged as negligence."

Let the conduct of McDaniel and Tindal be considered in the light of this principle. How can it be said, in reason, that either of them owed Stone any duty to be careful for his safety *under a car in the yard without the protection of*

*a blue flag?* What right had either to suppose for a moment that he would violate so important a rule for his own safety? Or, even if there had been no such rule, that he could have been guilty of such reckless folly as to go under a car in a railroad yard where two engines were constantly switching, and where one of them was then switching in his immediate vicinity. The testimony shows that the employees working in the yard all knew, or ought to have known, that switching was constantly being done by two engines on the yard. Therefore, neither McDaniel nor Tindal owed Stone any legal duty to take care for his safety *at the place where he was injured.* in the absence of any testimony that either of them knew that he was there, because they both had the best of reasons to suppose that he would not be there. Now, if the alleged negligence of Tindal had caused injury to one of the train crew, then it might have been actionable, because he owed the crew the legal duty of taking care of their safety. But he owed Stone no more duty *under the car* than he would have owed a tramp, who was attempting to secrete himself there, or one who was secreted in the car.

Judgment reversed.

MR. JUSTICE FRASER, *dissenting.* I cannot concur in the opinion of the majority. I fully concur in all that is said about the necessity for obedience to rules, but I see nothing in the case to warrant the conclusion that the deceased violated any rule. I see nothing in the case that required or permitted him to flag the cars on track No. 5. He was working on a car on track No. 4. The rule required him to flag it as he was working on the car and he was working under a flag on track No. 4. Without any reference to the completion of his work and simply because track No. 4 was needed for other purposes, he and his flag were ordered off of track No. 4. He was warned that track No. 4 was

needed.   It was for the jury to say whether, under the circumstances, track No. 4 was needed for immediate use. He left track No. 4 and went to track No. 5.   The two tracks were very near together.   To step away from track No. 4 was to step toward track No. 5.   The rule did not permit him to flag track No. 5.   Was it negligence not to warn him that the engine would come on track No. 5 instead of track No. 4?   That, in my judgment, was a question for the jury.