11893

CAMPBELL v. THAYER MFG. CO.

(130 S. E., 880)

MASTER AND SERVANT—DEATH OF EMPLOYEE BOARDING MOVING TRAIN IN VIOLATION OF RULE HELD NOT ACTIONABLE.—Evidence that de-

ceased boarded moving log train in violation of employer's rules, and met his death in attempting to move back to engine, *held* to preclude recovery for master's negligence.

Before Henry, J., Colleton, November, 1923. Reversed and remanded with directions.

Action by Charles Campbell as administrator of the estate of Preston Campbell, deceased, against the Thayer Manufacturing Co. From a judgment for plaintiff, defendant appeals.

*Messrs. Howell & Fishburne,* for appellant, cite: *Directed verdict proper:* 81 S. C., 100; 61 S. E., 900. *Contributory negligence as a matter of law:* 90 S. C., 42; 72 S. E., 634; 1913 Ann. Cas., 1; 80 S. E., 433; 81 S. E., 184 *Passive negligence:* 81 S. C., 100; 61 S. E., 900. *Violation of employer's rules:* 80 S. E., 433. *Actionable negligence:* 80 S. E., 433.

*Mr. R. M. Jeffries,* for respondent, cites: *Question of wilfulness and wantonness not considered in lower Court:* 106 S. C., 123; 90 S. E., 260. *Duty to provide safe place for employees to work in:* 123 S. C., 199; 116 S. E., 97; 110 S. C., 560; 95 S. E., 909; 119 S. C., 828; 101 S. C.; 73; 85 S. E., 231. *Duty to provide safety for passengers:* Civ. Code, 1922, Sec. 4933. *Contributory negligence and assumption of risk by employee of carrier:* Const., 1895, Art. IX. Sec. 15; Civ. Code, 1922, Secs. 4914-4917; 119 S. E., 828; 60 S. C., 9; 38 S. E., 232; 27 Wyo., 481; 26 A. L. R., 64. *Defendant a carrier:* 120 S. C., 165; 112 S. E., 536. *Directed verdict not warranted:* 119 S. E., 828; 118 S. E., 613; 117 S. C., 291; 109 S. E., 102; 112 S. C., 7; 99 S. E., 354; 106 S. C., 123; 90 S. E., 260; 106 S. C., 419; 91 S. E., 324; 101 S. C., 249; 85 S. E., 407. *Master to supply supervision of servants:* 123 S. C., 199; 116 S. E., 97. *Contributory negligence question for jury:* 123 S. C., 135; 113 S. E., 577; 117 S. C., 4; 108 S. E., 89; 114 S. C., 78; 103 S. E., 150; 112 S. C., 541; 100 S. E., 151

109 S. C., 343; 96 S. E., 138; 66 S. C., 482; 45 S. E., 81.
*Contributory negligence no defense to wanton injury:* 106
S. C., 123; 90 S. E., 260; 102 S. C., 468; 85 S. E., 952.
*Proximate cause:* 127 S. E., 265 120 S. E., 492; 127 S.
C., 17; 114 S. E., 761; 121 S. C., 133; 113 S. E., 577; 115
S. C., 168; 104 S. E., 567; 114 S. C., 156; 103 S. E., 512;
101 S. C., 59; 85 S. E., 233; 92 S. C., 329; 75 S. E., 549;
76 S. C., 202; 56 S. E., 958; 52 S. C., 336; 29 S. E., 910.

December 22, 1925.

The opinion of the Court was delivered by MR. JUSTICE
WATTS.

The above-entitled cause was a suit for personal injury
resulting in the death of plaintiff's intestate, and was tried
in the Court of Common Pleas for Colleton County at the
November Term, 1923, before Judge J. K. Henry, and a
jury, and resulted in a verdict for the plaintiff in the sum of
$1,750. From a judgment entered thereon, defendant ap-
pealed.

The exceptions, eight in number, complain of error on the
part of his Honor in not granting a nonsuit asked for by
the appellant and in not directing a verdict as asked for by
the appellant.

The following statement derived from the evidence in the
case shows how the deceased was killed:

"The plaintiff's intestate was a negro of about 18 years
of age, and the accident resulting in his death occurred on
or about December 8, 1922, while in the employment of the
defendant as a member of the woods crew engaged in log-
ging operations in Colleton County. At the time of his
death, the woods crew were engaged in work at a point
about 5 or 6 miles from the large sawmill plant of the de-
fendant, and they were transported back and forth by the
defendant's log train. The evidence shows that the mem-
bers of the crew lived in and around the sawmill plant. The
method of going to work and of returning is fully described

in the testimony. The large whistle of the mill itself would be blown at 5 o'clock in the morning for the purpose of working the hands in order for them to get ready to board the log train which left the plant at 6 o'clock. At 5:30 the whistle of the log train engine would be blown as a further warning to the crew, who were expected to board the said train at the plant. The train would also stop at the crossing made by the track with the public road which runs right by the plant, so that some members of the crew might board the train there. The testimony shows that the station or place for boarding the train at the plant was illuminated by an electric light, and that there was also an electric light at the road crossing above referred to. The logging train, on the morning of the accident, was made up of the engine and the usual engine cab, a tender, and several logging trucks. The evidence as to how this negro met his death was given by two witnesses—the two persons who saw him last before his body was discovered on the railroad track. And as to the circumstances of his death there is not the slightest difference or contradiction in the testimony.

"The testimony of Allen Boyles, a brother-in-law of the deceased, is to the effect that they lived together; that they overslept on the morning of the accident, and that the logging train was actually in motion and moving out of the woods as they were leaving their shanty; that each had a dinner bucket and ran to catch the logging train, Boyles being in advance; that he boarded the train while it was going at the rate of about 3 or 4 miles an hour by getting on the tender, where he remained until the train reached its destination in the woods, some 5 or 6 miles distant, which was the scene of their labors. He says that when he had covered about half the distance between his house and the moving train, the deceased was about 50 yards behind him, and he never saw him any more; that this was 6 o'clock in the morning in December, and it was quite dark. He further said that the train proceeded without stopping any more,

and that, if the deceased succeeded in boarding the train, it was done while the train was in motion. He described the construction of the logging trucks, which composed a part of the train, as follows:

"Q. Now these logging trucks are constructed with a piece of timber across about 12 inches wide? A. Yes, sir; something like that.

"Q. And that was a very heavy piece of timber, and a man could sit on that timber with perfect ease? A. Yes, sir.

"Q. And that is what they haul the logs in the mill on? A. Yes, sir.

"Q. Now how do they keep the logs on the trucks? A. With a stanzier.

"Q. That's at the end of this piece that goes across? A. Yes, sir.

"Q. And there is a piece of timber that runs under there that holds the cars together, about the center of the track? A. Yes, sir; about 6 inches wide.

"Q. Six inches wide? A. Yes, sir.

"The witness, Eldridge Smith, saw the deceased that morning after he had succeeded in boarding the trucks. His testimony is in agreement with that of Allen Boyles to the effect that the engine was pushing the trucks in front of it going out to the woods. He states that he caught the forward truck, and that the deceased got on the same truck and at the same place. This witness had also overslept, and only succeeded in catching the logging train on the run and while the train was in motion."

The deceased knew that the caboose was not attached to the train, that it had been left in the woods because it was dangerous to bring the men back in it, as testified to by Fennell, Superintendent of the logging operations.

"The witness, Eldridge Smith, who was the last person who saw the deceased in life, testified:

"Q. You caught the train while the train was running off? A. Yes, sir.

"Q. You got on the last logging truck from the engine? A. Yes, sir.

"Q. And you got on the very fartherest logging truck from the engine? A. Yes, sir.

"Q. The first one in front of the engine? A. Yes, sir.

"Q. After you got on, Preston Campbell got on there with you? A. Yes, sir.

"Q. You got on first? A. Yes, sir.

"Q. When he got on the train was running? A. Yes, sir; running a little faster when I got on it.

"Q. Now you say he got on the train. What did he do when he got on the train? A. He got up on this piece that runs across and sit down.

"Q. What did he do after that? What did Preston do? A. He started to run across.

"Q. He started down there? A. Yes, sir.

"Q. The train was still running all the time? The train did not stop any more? A. Yes, sir; I suppose it was going a little faster.

"Q. The train you say was going a little faster? A. Yes, sir.

"Q. Well, what happened at that? Did Preston Campbell ever get up and start to walk across the cars to the engine? A. He got up and said, 'Let's go back to the engine.' I know he got up and started back to the engine, and that is all I know about it.

"Q. You saw him get up and make a start right behind you? A. Yes, sir.

"Q. He went on trying to get back to the engine? A. Yes, sir.

"Q. The train was running then? A. Yes, sir.

"Q. And after he made his start behind you, did you look back and see him any more? A. No, sir; I could not look back.

"Q. Why couldn't you look back?    A. I might have fell off.   I did not look back any more.

"Q. You saw him make his start?    A. Yes, sir.

"Q. Did you see him any more?    A. No, sir.

"Q. Never did see him any more?    A. No, sir.

"Q. I believe you testified that when you started to get on the train had already started?    A. Yes, sir.

"Q. And Preston Campbell got on after you did?    A. Yes, sir.

"Q. And both of you got on the front logging truck in front of the engine?    A. Yes, sir."

Under the testimony in the case no actionable negligence was proven against the appellant to entitle the respondent to recover damages.   The respondent's intestate violated the rule of the defendant in boarding a moving train.   The defendant did not know the deceased was on the train at all. The evidence fails to show any negligence on the part of the defendant that in any manner contributed to the death of the deceased, as a proximate cause, but the evidence shows that the deceased was injured by his own negligence and want of care on his part, and his negligence and want of care was the sole cause of his injury; under the evidence in the case no other inference or conclusion could be arrived at under the law as laid down in *Bouchillon v. Railway Co.,* 90 S. C., 42; 72 S. E., 634, Ann. Cas., 1913D, 1; *Stone v. A. C. L. R. R. Co.,* 96 S. C., 228; 80 S. E., 433, and *McLean v. R. R. Co.,* 81 S. C., 100; 61 S. E., 900, 1071; 18 L. R. A. (N. S.), 763, 128 Am. St. Rep., 892.

The exceptions are sustained, judgment reversed, and case remanded to the Circuit Court for the Clerk of Court of Colleton County to enter up judgment in favor of the defendant under rule 27.

Reversed.

MESSRS. JUSTICES COTHRAN and MARION and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.

MR. CHIEF JUSTICE GARY did not participate.