8331

PINCKNEY v. ATLANTIC COAST LINE R. R. CO.

1. MASTER AND SERVANT—RAILROADS—CAR REPAIRER—BLUE FLAG.—
   Where the evidence tends to show a car repairer had had his blue
   flags run into and broken up, and himself narrowly escaped injury
   while working under a blue flag: that his superior on the spot know-
   ing he had no flag ordered him under a car to repair it; that he told
   the conductor who soon thereafter ran a train into the car he was
   repairing; that he was going under a particular car to repair it; that
   he placed his fellow workman on the outside to look out for trains,
   the issues of negligence, contributory negligence and wilfulness were
   properly sent to the jury.
2. IBID.—IBID.—The servant may disregard the usual reasonable rules of
   the master and obey the representative of the master on the spot.
3. IBID.—IBID.—FELLOW SERVANT.—The master is liable for injury to
   the servant caused by his negligence combining and commingling with
   the negligence of a fellow servant as a proximate cause.
4. IBID.—IBID.—Where a servant is employed by one railroad to work in
   a yard used by two roads jointly and does work indiscriminately for
   both roads, the one employing him is responsible for injuries received
   while working in such yard.

Before SEASE, J., Colleton, November term, 1911.
Affirmed.

Action by J. B. Pinckney by guardian against Atlantic
Coast Line Railroad Company and Charleston & Western
Carolina Railway Company.

The motion to direct a verdict was made on the following
grounds:

First. "There is no evidence tending to support the alle-
gations of punitive damages, against either defendants.

Second. "There is no evidence tending to establish action-
able negligence against either defendants.

Third. "The entire evidence shows that the injury to the
plaintiff was the result of his own negligence.

Fourth. "The entire evidence shows that the injury to
plaintiff was the result of his contributory negligence as a

proximate cause, and without which it would not have happened.

Fifth. "The entire evidence shows that the injury to plaintiff was the result of the act of a fellow servant, combining with plaintiff's negligence as a proximate cause.

"In addition to the grounds for the direction of a verdict already presented the Atlantic Coast Line Railroad Company asks your Honor to direct a verdict so far as it is concerned for the reason that the testimony shows that the plaintiff in this case worked for both roads and that at the time of his injury he was working for the C. & W. C. Railway Company upon a car of the C. & W. C. Railway Company, was injured by a train and officials of the C. & W. C. Railway Company and the A. C. L. R. R. Co. had no part whatever in the infliction of the alleged injury to the plaintiff."

Defendants appeal on the following exceptions:

I. "It was error in his Honor to refuse the motion of the defendant to direct a verdict for the defendants on the fourth ground submitted in this behalf, to wit: 'The entire evidence shows that the injury to plaintiff was the result of his contributory negligence as a proximate cause and without which it would not have happened,' the error being:

"(a) Assuming that the testimony tended to establish actionable negligence as against the defendants or either of them in the matters complained of, which, however, defendants do not admit as a fact; the testimony shows conclusively that plaintiff was guilty of contributory negligence in undertaking to repair the car in the manner and way in which he did. It appears clearly from the testimony that there was no emergency—that plaintiff had the option to choose his own time within which to make the repairs—that the repairs to be made were of little consequence which was well known to plaintiff before he undertook to make the same, that he did not undertake to provide himself with a

blue flag before entering on the work and did not call to the attention of the chief car inspector, Mr. Rabb, that he was going about the work in violation of the blue flag rule and did not ask at the time for a blue flag and made no effort whatever of any kind to procure a blue flag; that he knew the work was dangerous and knew the blue flag rule which absolutely required him to display the flag before going under the car and knew that he was violating the rule and admits that he knew it was a most dangerous thing to do.

"(b) Even if it be assumed that plaintiff's testimony was true, that most of his flags were broken, yet the testimony shows that at least one flag was not broken, but was placed in the office where they were kept a day or so before the accident, and further, that at least some of the flags which he claims were broken were in condition to be used, the same having been torn in half, and the testimony clearly showing that the same could be used in this condition by placing them at the end of the car or on a stick in the center of the track, yet notwithstanding this, plaintiff made no effort whatever to find the flag which had been left in the office, and made no effort whatever to use the flags that were broken, and did not before undertaking the work ask Mr. Rabb whether a supply of flags had been received and were then available for use, it being respectfully submitted that it was the duty of the plaintiff to comply with this rule if by the exercise of reasonable care on his part he could have complied.

· "(c) Taking the most favorable view to plaintiff of his testimony it appears that several days before the accident he had requested Rabb to order a new supply of flags; that ample time had elapsed within which to receive the same and yet on the morning of the accident before undertaking the work of repairing the car he did not ascertain and made no effort to ascertain whether the flags had arrived, but without exercising any care whatever in undertaking to find out whether there were flags available undertook the work with

full knowledge of its dangers and of the perils likely to follow, relying for his protection on an alleged conversation with the conductor whom he does not advise, however, that he intended in doing the work to violate the blue flag rule, and rely on the protection to be given him by his fellow servant, Freeman, substituting and relying on said conversation and Freeman for the protection afforded by the blue flag.

"(d) The testimony shows that the blue flags were available and could have been used, but instead of making use thereof and complying with the blue flag rule plaintiff deliberately and of his own free will violated defendants' rule and substituted therefor his fellow servant, Freeman, and his alleged conversation with Conductor Partain.

"(e) Plaintiff failing to procure a blue flag should have refused to do the work and should not have gone under the car without the protection of a blue flag. He knew the danger and knew the rule absolutely requiring the blue flag to be displayed before going under a car and with full knowledge of these conditions on his part and with full knowledge of the almost certain danger that would follow his violation of the rule, and there being no emergency was as a matter of law guilty of contributory negligence and his Honor should have so held.

II. "His Honor committed error in not directing a verdict in favor of the defendants on the fifth ground submitted in this behalf, to wit: 'The entire evidence shows that the injury to the plaintiff was the result of the act of his fellow servant combined with plaintiff's negligence as a proximate cause,' the error being:

"(a) The evidence shows that Freeman was a fellow servant of plaintiff, engaged in the same work as the plaintiff and on the same piece of work at the time of the acci·dent and in the same department of labor. It shows that plaintiff relied on Freeman to warn him of the approach of any train while he was under the car engaged in making

repairs; that Freeman failed to notify him of the approaching car in time to enable him to escape without injury and his Honor should on this ground have directed a verdict for the defendants.

"(b) There is no testimony whatever tending to show that the injury to plaintiff was caused by the combined negligence of the master and fellow servant. There is no allegation in the complaint charging a failure to furnish sufficient appliances, but even if it be assumed that the complaint embraces this and even if it be assumed that there is evidence tending to show a failure on the part of the defendants to furnish sufficient flags and further that the conductor was told by plaintiff of his intention to repair the car, still it is respectfully submitted that there is nothing in this upon which to predicate any charge of combined negligence as causing the injury. The conductor was not told by plaintiff that he was without a flag or that he intended to rely upon the notice given to the conductor as a substitute for the blue flag rule. He was not advised that the blue flags were not available, and had no notice or any information from which notice can be legally inferred or charged against the company that the flags could not be had, and that Pinckney intended in making the repairs to do so in violation of the blue flag rule, and it is, therefore, respectfully submitted that even if it be held by this Court that there is some evidence tending to establish negligence against the company in either or both of these particulars, still it cannot logically be said that the injury was the result of such negligence combined with the negligence of Freeman, a fellow servant. Each is entirely independent of the other and there is no element of combination, and, in fact, no connection whatever between the alleged negligence of the master and the admitted negligence of Freeman, the fellow servant.

"(c) In order for plaintiff to avail himself of the doctrine of combined negligence of the master and fellow servant it

must appear that the same was the proximate cause of his injury. If the proximate cause was the negligence of the fellow servant then plaintiff cannot recover, and it is respectfully submitted in this case that it appears absolutely and to the mathematical demonstration that the proximate cause of the injury was the negligence of plaintiff in relying on his fellow servant, Freeman, and the negligence of his fellow servant in failing to notify him of the approach of the engine in time to escape from under the car.

III. "It is respectfully submitted that his Honor committed error in charging the jury as follows: 'Therefore, when you are measuring and investigating the conduct of any person to a transaction you will ask yourselves did he measure up to that standard, to wit, did he do that which a man of ordinary prudence and care would have done. If he did then he cannot be said to be guilty of negligence,' the error being:

"(a) His Honor in so instructing the jury charged in respect to matters of fact in violation of section 26, article V of the Constitution of 1895.

"(b) What a man of ordinary prudence and care would have done in any given circumstances is at most only evidence to go to the jury on the question of negligence, but is not a conclusive test whether due care has been exercised, and his Honor in so instructing the jury as he did in the language complained of committed error of law.

IV. "It is respectfully submitted that his Honor committed error in charging the jury as follows: 'So, gentlemen, when you come to the question of negligence, you will ask yourselves when you are taking up the question of the negligence of the defendants, their agents and servants, you will ask yourselves this question, did the agents, servants and employees of the defendants on this occasion observe the care that a man of ordinary prudence and care would have observed under all the circumstances and the conditions then and there surrounding them, if you will find that they did

then the plaintiff cannot recover. *If you find that they did not measure up to the standard of a man of ordinary prudence and care then you would find that they were negligent,* then take the conduct of the plaintiff and ask yourselves the question, would a man of ordinary prudence and care have acted as you find he acted on this occasion? *If you find that he did that then he could not be said to be guilty of negligence,* if you find that he did, or left undone anything that a man of ordinary prudence and care would not have done or left undone then you will find and deem him to be guilty of negligence,' the error being:

"(a) In instructing the jury that if the agents and servants of the defendants did not measure up to the standard of a man of ordinary prudence and care the jury should find that the defendants were negligent, his Honor charged on the facts in violation of section 26, article V of the Constitution of 1895.

"(b) His Honor plainly instructed the jury what facts would constitute negligence.

"(c) The agents and servants of the defendants may not have measured up to the standard of a man of ordinary prudence and care and yet in the circumstances of this case acted as careful men should have acted.

"(d) In instructing the jury that in order to determine the question of plaintiff's negligence that they should ask themselves the question, would a man of ordinary prudence and care have acted as plaintiff acted on the occasion in question, and if it was found that plaintiff did that, then they could not say that plaintiff was guilty of negligence, his Honor charged on the facts in violation of article V, section 26 of the Constitution of 1895, and told the jury what facts would constitute negligence.

"(e) A prudent and careful man may and frequently does act in a careless and negligent way, and his Honor in instructing the jury in the language complained of in this particular gave the jury an entirely erroneous and illegal

test. Instead of giving the jury a definition of negligence his Honor instructed them what facts would constitute negligence and told the jury that if it should conclude that plaintiff acted on the occasion as the jury might think a man of ordinary prudence and care would have acted that they could not and must not find plaintiff negligent; whereas. it is submitted, that the usual and customary way that a man of ordinary prudence and care would. perform a certain act is not a conclusive test as to whether due care was exercised therein. It is merely evidence which should go to the jury along with other evidence in the case leaving it to the jury to determine from all of it whether as a fact due care was exercised.

V. "It is respectfully submitted that his Honor was in error in instructing the jury as follows, in reference to the negligence of a fellow servant, to wit: 'Now on the subject of that very doctrine there is a different rule and a different law applicable to railroads, different from other parties,' and in this connection reading to the jury as applicable to this case article IX of the Constitution of 1895, the error being:

"(a) That in telling the jury that the law of fellow servant as applied to railroads. is different from that which obtains as to other parties was wholly misleading and erroneous when applied to the facts of this case because the only principle of law the jury could consider in this case was as to the combined negligence of the master and fellow servant, it being an admitted fact that plaintiff and Freeman were fellow servants, and that the negligence of Freeman if a proximate cause of plaintiff's injury would defeat his recovery. Therefore, in telling the jury that a different rule of law applied his Honor confused and misled the jury, as to the point before it for determination.

"(b) Article IX of the Constitution. which his Honor read to the jury in nowise changed or modified. the general principles of law applicable to the question before the jury

and had absolutely no bearing whatever on the question and could only tend to confuse the jury in its deliberation.

VI. "His Honor committed error in instructing the jury in the language of plaintiff's third request as follows, to wit: "That if the jury find as a further fact that the defendants failed and omitted to furnish plaintiff with a blue flag, plaintiff having exercised due diligence in bringing such failure to the attention of his superior officer, and that the plaintiff, notwithstanding such failure on the part of the defendants and such notice on the part of the plaintiff, was instructed by his superior officer to repair the car, as alleged in the complaint, and that the plaintiff, before engaging in inspecting and repairing the same, gave notice to Conductor Partain of his purpose, as alleged in the complaint, and was given assurance by the said conductor that he was through on the yard and that the plaintiff could go to work on the said car without molestation by the said conductor, as alleged in the complaint, and that the plaintiff was injured by the negligent or wilful act of the said conductor, as alleged in the complaint, then the jury will find for the plaintiff." I charge you that, provided you find that the plaintiff's conduct towards Conductor · Partain under all the circumstances was the exercising of due care and was not negligence,' the error being:

"(a) In saying 'plaintiff having exercised due diligence in bringing such failure to the attention of his superior officer,' his Honor charged on the facts of the case in violation of section 26, article V of the Constitution of 1895.

"(b) The entire request could only be regarded by the jury as an instruction as to the existence of certain facts, to wit, the exercise of due diligence on the part of plaintiff and the giving of notice by plaintiff to the conductor and being assured by the conductor that he was through on the yard and might proceed with the work without molestation, and if not a violation of the strict letter of section 26 and article V of the Constitution is certainly a clear violation

of its intent and spirit and within the meaning of its terms a charge on the facts.

"(c) In telling the jury 'I charge you that provided you find that plaintiff's conduct towards the conductor was the exercise of due care and not negligence,' his Honor assumed as a fact that there was some conversation with plaintiff and the conductor bearing on the material facts of this case and thereby charged on the facts of the case in violation of the constitutional provision in this behalf, section 26, article V.

VII. "It is respectfully submitted that his Honor committed error in not charging as submitted the defendants' first request and in modifying the same as follows, to wit: "If you find from the testimony in this case that the plaintiff could by the exercise of due care have secured a blue flag and failed to do so and use it, then I charge you as a matter of law that he cannot recover a verdict at your hands in this case." I charge you that, provided the defendants, their agents and servants were not guilty of wilfulness and that wilfulness was the proximate cause of his injury,' the error being:

"(a) As modified by his Honor the request was entirely emasculated.

"(b) The request as submitted contains a sound principle of law, to wit, that if plaintiff's injury was due to his own negligence that he could not recover, and in modifying this his Honor confused the jury by making it appear that this request was intended to cover contributory negligence by the plaintiff.

"(c) In any view of the matter the modification was wrong, erroneous and misleading, because it is an admitted fact that defendants did move the car, which was a wilful act in the sense that it was a voluntary act on behalf of the defendants. The jury, therefore, were instructed by his Honor that if the car was moved deliberately and of the defendants' own volition and intention that plaintiff could

recover although it might also appear that his injury was due to his own negligent conduct in not making use of the blue flag.

"(d) The modification must be construed with reference to the facts of this case and when so considered the effect thereof is to absolutely destroy the proposition of law contained in the request and in effect and law amounts to a refusal to charge the said request.

VIII. "His Honor, it is respectfully submitted, committed error of law in modifying the second request of the defendants, as follows, to wit: "In this case the Supreme Court has held that 'if the plaintiff disregarded the blue flag rule so essential to his own safety as well as the safety of other employees and the general public, when he could have complied with it by reasonable effort on his part, then he is not entitled to recover.' And I charge you in this case if it appears from the evidence that the plaintiff could have complied with this rule by reasonable effort on his part and failed to do so that he cannot recover and your verdict must be for the defendant companies." I charge you that, provided that you do not find that the defendants, their agents, servants and employees were guilty of wantonness and wilfulness, and that that wantonness and wilfulness was the proximate cause of the injury to the plaintiff,' the error being:

"(a) That the request contains a sound proposition of law vitally applicable to this case and should have been charged without modifications.

"(b) There was not the slightest evidence of wilfulness or wantonness in the case and the continued iteration and reiteration of this by his Honor to the jury was misleading and impressed upon the minds of the jury the idea of his Honor that there was wilfulness shown by the testimony and deprived the defendants of a fair consideration by the jury of the propositions of law applicable to the case.

IX. "His Honor committed error in refusing to charge the defendants' fifth request as follows, to wit: " 'If you find in this case from the testimony that the plaintiff failed to afford himself the protection of the blue flag, but relied on Freeman as a substitute for the blue flag rule, he cannot recover." I cannot charge you that, I have got to modify all these charges. I think these charges must have been based on the ground that I would not submit to you the question of wilfulness; that is, I cannot charge you that proposition as stated *because there are other elements that the jury must take into consideration,*' the error being:

"(a) The request contains a sound proposition of law vitally applicable to this case and the refusal of his Honor to so charge was in effect the direction of a verdict against the defendants and in favor of the plaintiff.

"(b) The charge of his Honor in this behalf deprived the defendants of the defense of negligence of a fellow servant as the proximate cause of the injury, and it is submitted that the testimony fairly considered abundantly establishes the fact that plaintiff's injury was due to the negligence of his fellow servant, Freeman, and that plaintiff relied on Freeman as a substitute for the blue flag rule.

"(c) His honor does not undertake to modify this request, but states that he is going to modify all the requests to charge, and states to the jury that there are other elements which they must take into consideration, and if this language be taken as a modification then it was error in his Honor for the reason that he thereby told the jury that they must consider the question of wilfulness and wantonness in considering this request and in effect in so doing told the jury to disregard the request.

"(d) If plaintiff was injured by reason of his substituting his fellow servant for the protection of the blue flag then it is submitted that wilfulness could not be and should not be considered by the jury because it would preclude the

idea of his injury having been occasioned by any act of the defendants.

X. "It is respectfully submitted that his Honor committed error in refusing to charge the jury the defendants' request, as follows, to wit: " 'You are further instructed that if you find that the plaintiff in this case did not observe the blue flag rule and could have done so, but instead relied on. his conversation with Conductor Partain as a substitute for the blue flag rule then he cannot recover." I refuse to charge you that,' the error being:

"(a) That this request contains a correct proposition of law vitally applicable to this case.

"(b) If plaintiff failed to observe the blue flag rule when he could have done so, but relied on his conversation with the conductor, then as a matter of law he could not be entitled to a verdict, and it was error in his Honor to refuse this request.

XI. "It was error in his Honor to refuse to charge the jury the defendants' seventh request as follows, to wit: " 'If you find from the evidence as a matter of fact that the plaintiff did tell the conductor that he intended to work under the car and should further find that the conductor negligently caused the car under which the plaintiff was working to be moved to his injury, still plaintiff could not recover if you should further find that by the exercise of reasonable care he could have procured a blue flag and thereby could have given himself the protection of the blue flag rule. In other words, if the plaintiff by the use of reasonable care could have made use of the blue flag as required by the rules, he cannot recover in this case simply because the conductor failed to remember his statement that he would be at work under the car." I refuse to charge you that,' the error being:

"(a) That the request contains a sound proposition of law applicable to this case. ·

"(b) In refusing this charge his Honor permitted a recovery on behalf of plaintiff although as a matter of law he was guilty of contributory negligence as the direct and proximate cause of his injury.

XII. "His Honor committed error of law in refusing to charge defendants' eighth request as follows, to wit: "'If it is a fact established by the testimony in this case that the plaintiff did not have a blue flag and could not by reasonable effort secure a blue flag, it was his duty in this situation to have advised the conductor that he had no flag, and that in going under the car he could not as a consequence observe the blue flag rule. It was not sufficient for him to have simply told the conductor he expected to work under a car, but he should have gone further and notified the conductor that he was unable to comply with the blue flag rule." I refuse to charge you that,' the error being:

"(a) That the request contains a sound proposition of law applicable to the case and should have been charged.

"(b) It was the duty of plaintiff if he intended to rely on the conversation with the conductor to have advised the conductor that he was unable to comply with the blue flag rule.

XIII. "It was error in his Honor to refuse the defendants' ninth request as follows, to wit: "'There is no evidence whatever in this case even tending to establish a waiver of the blue flag rule." I refuse to charge you that,' the error being:

"(a) There is not a particle of evidence in this' entire record tending to show a waiver of the blue flag rule and his Honor should have so instructed the jury.

XIV. "His Honor committed error in refusing to charge defendants' tenth request as follows, to wit: "'Counsel for the plaintiff argued that the defendant could waive the blue flag rule and that there was evidence in this case tending to show a waiver of the rule, but I charge you that there is no

evidence tending to establish a waiver of this rule in this case." I refuse to charge you that,' the error being:

"(a) That there was no evidence in this case tending to establish a waiver of the blue flag rule and his Honor in refusing this request permitted the jury to consider a question of this kind, vitally important to the case, upon the mere argument of plaintiff's counsel and without any evidence whatever.

XV. "His Honor committed error in refusing to charge the jury defendants' eleventh request as follows, to wit: " 'The jury are further instructed that the conductor of the freight train, to wit, Conductor Partain, had no power and could not as a matter of law waive the blue flag rule in so far as the plaintiff in this case is concerned." I refuse to charge you that,' the error being:

"(a) That the mere conductor on a freight train has no right whatever in law to waive a rule of the defendants intended for the protection of employees in an entirely different department of labor and in nowise connected with the said conductor and over whom he had no control whatever.

"(b) The conductor had no right or power to waive the blue flag rule in favor of the plaintiff in this case.

XVI. "His Honor committed error of law in not charging defendants' thirteenth request to charge as follows, to wit: " 'I charge you that the rule as to the use of the blue flag cannot be violated by an employee, and if he is injured because he violated it or contributed to his injury by not observing it, he cannot recover." I refuse to charge you that,' the error being:

"(a) This request contains a correct proposition of law vitally important to this case and should have been charged as given.

"(b) If an employee violates a rule of the company and is injured by reason of his violation thereof or if his failure to observe the rule contributes to his injury then as a matter

of law he cannot recover and his Honor should have so charged.

XVII. "His Honor committed error in refusing defendants' fifteenth request to charge, to wit: " 'I charge you that where there was no blue flag furnished the employee he should have refused to work under a car, which is extra dangerous work, until the blue flag was furnished him, unless in a case of an emergency." I refuse to charge you that,' the error being:

"(a) That the admitted evidence shows that plaintiff knew it was extra dangerous to go under the car without displaying a blue flag, and the evidence further shows that there was no emergency requiring him to do so. It is, therefore, submitted that plaintiff should have refused to go under the car in violation of the rule.

"(b) Where an employee knows that it is dangerous to violate a rule of the master and there is no emergency which requires him to violate it, if he deliberately does so he cannot recover as a matter of law against the master.

XVIII. "His Honor committed error of law in not charging defendants' sixteenth request as follows, to wit: " 'I charge you that the testimony in this case does not show any emergency justifying the violation of the rule." I refuse to charge you that,' the error being:

"(a) There is not a particle of testimony in this whole case suggesting any emergency in repairing this car or tending to show any emergency to justify a violation of the blue flag rule, and his Honor should have so instructed the jury as requested.

"(b) Where there is no testimony in a case tending to establish any material fact it is the duty of the Court on request to so instruct the jury.

XIX. "His Honor committed error in refusing to instruct the jury in the language of plaintiff's seventeenth request, as follows, to wit: " 'I charge you that in order to recover because a blue flag was not at hand for the use of plaintiff

the plaintiff would have to show that at the time he was ordered to do the work he demanded a blue flag for use in the work and the defendants refused to furnish him." I refuse to charge you that,' the error being:

"(a) This request contains a sound proposition of law and should have been charged.

"(b) It was the duty imposed on plaintiff to exercise some reasonable effort to procure a blue flag and his Honor should have instructed the jury as requested that it was his duty to demand a flag at the time he was ordered to do the work, and that defendants refused to furnish the same.

"(c) If plaintiff, by the exercise of reasonable care, could have procured a flag it was his duty to have done so, and his failure so to do would not justify his violation of the blue flag rule.

XX. "His Honor committed error in not charging defendants' nineteenth request as follows, to wit: " 'I charge you that if a car repairer or inspector of a railroad company complies with the blue flag rule he gives notice to every employee of the railroad company not to move the car while he is working under it, and the company is liable for injury to him caused by any of its employees in moving the car. I charge you further that the plaintiff in this case cannot set aside this rule made for his protection by giving verbal notice to one employee, say a conductor, if another employee such as an engineer without such notice took part in moving the car." I refuse to charge you that,' the error being:

"(a) This request contains a sound proposition of law applicable to this case.

"(b) Verbal notice to one employee certainly could not be said to imply notice to another employee. If the engineer without notice moved the car to the injury of plaintiff who had not observed the blue flag rule he should not be permitted to recover.

"(c) The blue flag rule was intended to give notice to every employee of the company not to move the car and the

company is certainly liable for an injury caused by moving a car where the rule has been observed, and his Honor should certainly have so instructed the jury, and in failing so to do he left the jury wholly uninstructed as to the true purpose and meaning of the blue flag rule and wholly uninstructed as to the liability of the defendants in cases where an employee had complied with this rule, thereby leaving with the jury the impression that defendant might not be liable even if the blue flag rule had been observed.

"(d) It was important to a proper trial of this case that the jury should clearly understand that if the blue flag rule was observed that the company was absolutely liable—that if it was not observed when it could have been that the defendant was not liable; that verbal notice to one employee that plaintiff intended to set aside the rule could not possibly be notice to another employee of this fact, and where another employee in the absence of such notice took part in the movement of the car plaintiff should not be permitted to recover.

XXI. "His Honor committed error in not charging defendants' twentieth request to charge as follows, to wit: " 'I charge you that the plaintiff cannot change the blue flag rule by relying on the protection of the conductor because the company not being a party to the change of the rule, unless the conductor has been appointed as a representative of the master to change this rule, of which there is no evidence in this case. If the plaintiff instead of placing the blue flag as required by the rules, relies on the notice given to the conductor he thereby constitutes the conductor his agent for protection, and cannot hold the defendants liable for failure of the conductor to protect him. The conductor in such case does not represent the master so as to give him protection, which protection the company has adequately provided for otherwise by the rule." I refuse to charge you that,' the error being:

"(a) It is respectfully submitted that this request contains a sound proposition of law applicable to this case.

35—92

"(b) If plaintiff instead of complying with the rule undertook to rely on the conductor as a protection he certainly in law would constitute the conductor his agent and could not recover for a failure of the conductor to protect him. The conductor in no sense could represent the master for the purpose of waiving the rule or for the purpose of giving him protection in violation of the rule, it being respectfully submitted that the rule is binding on the conductor as well as all other employees and could not be waived without express authority so to do, and there was no evidence in this case pending to establish any such authority.

"(c) Plaintiff certainly could not change the blue flag rule by substituting verbal notice to the conductor, and it was error in his Honor not to so instruct the jury as he was requested to do.

XXII. "His Honor committed error in not charging the defendants' twenty-first request as follows, to wit: " 'I charge you that if you find that the plaintiff told the conductor that he was going to work under the car this did not relieve him of the duty to place the blue flags. That the conductor had the right to assume, unless notified to the contrary, that he would place a blue flag as required by the blue flag rule." I refuse to charge you that,' it being respectfully submitted:

"(a) That this request contains a sound proposition of law and should have been charged.

"(b) It is submitted that as a matter of law and logic notice to a conductor that a car repairer intends to do some work on a car will not imply notice or knowledge that in doing so he intends to violate the blue flag rule.

"(c) All employees have the right to assume that other employees will observe the rules of the company in the absence of notice to the contrary, and in this case there is not a particle of testimony tending to show that plaintiff told the conductor that he was not going to observe the rule.

All that he claims that he told him was that he was going to work on the car.

XXIII. "It was error in his Honor to submit to the jury in this case the question of punitive damages, when there was not a particle of testimony in the entire case to indicate anything going to establish wanton or wilful conduct on the part of the defendants or anything to entitle plaintiff in any view of the matter to punitive damages.

XXIV. "It was error in his Honor not to direct a verdict for the defendants on the cause of action for punitive damages, the error being:

"(a) That there was no testimony tending to establish such cause of action.

XXV. "The Constitution of South Carolina requires and directs that Judges shall in the trial of jury cases declare the law, that is, that they shall instruct the jury as to the principles of law which shall govern in the trial of the said case. It is respectfully submitted that the charge of his Honor considered as a whole or in parts does not correctly instruct the jury as to the law applicable to this case, but, on the contrary, gave to the jury a wholly incorrect idea as to the law which should govern in the trial of this case. His Honor refused outright most of the requests of the defendants and so modified the others as to entirely emasculate the same, and iterated and reiterated to the jury the idea of punitive damages when the decision in this case, which was the law of the case, eliminated that question from further consideration, and when the testimony wholly failed to even suggest any consideration of punitive damages or wanton or wilful conduct. His Honor's theory of this case was clearly impressed on the jury, and that theory was that plaintiff was entitled to recover a verdict, both for punitive and actual damages, regardless of the fact that plaintiff violated the blue flag rule, and without regard to the fact that he knew it was dangerous so to do, and without regard to the fact that he admitted having made no effort at the time of under-

taking the work to procure a blue flag, and regardless of the fact that he admits that he relied on Freeman, his fellow servant, as a substitute for the blue flag rule and his alleged conversation with the conductor, in which it is not even claimed that he told the conductor that he was not going to comply with the rule. His Honor was clearly of the opinion that the mere conversation with the conductor, testified to by the plaintiff of his intention to repair his car, was sufficient in law to give to plaintiff a cause of action, both for actual and punitive damages, and it is respectfully submitted that the entire charge is capable of this construction and this construction only, and in so charging the jury his Honor committed prejudicial error.

XXVI. "His Honor committed error in submitting to the jury the question of wanton and wilful misconduct of the defendants or either of them because there was no testimony in the entire record tending to establish any wanton or wilful conduct on the part of either defendant.

XXVII. "His Honor committed error in his refusal to grant a new trial on the first ground submitted, to wit, that there is no testimony whatever tending to support the verdict, the error being:

"(a) There is no testimony in this case, it is respectfully submitted, tending to support the verdict.

XXVIII. "His Honor committed error in refusing to grant a new trial on the sixth ground submitted for a new trial, to wit: 'Because the evidence is that plaintiff was the author of his own injury in that he knowingly and unnecessarily violated the blue flag rule without the presence of any emergency so to do and without notifying the officers and employees in charge of the train that he intended to violate such rule, which rule was enacted for and vital to his own safety,' the error being:

"(a) That there was no emergency whatever requiring plaintiff to do this work in violation of the rule, and the

testimony shows that he knowingly and unnecessarily vio-
lated the blue flag rule to his injury.

XXIX. "His Honor committed error in not granting a
new trial on the seventh ground submitted, to wit: 'Because
the only inference to be drawn from the evidence is that if
plaintiff's negligence was not the sole cause, it was at least
a contributory proximate cause of his injury, in that he vio-
lated an important rule, to wit, the blue flag rule, promul-
gated for and essential to his safety, without notifying the
conductor of the train of his intention to violate such rule,'
the error being:

"(a) That the entire testimony shows that the plaintiff
was guilty of contributory negligence as a proximate cause
of his injury.

XXX. "His Honor committed error in not granting a
new trial on the eighth and ninth grounds submitted as fol-
lows, to wit: 'In charging the first and second requests to
charge and in charging plaintiff's third request with the
modification as charged.'

" 'In modifying the 1st, 2d, 3d, 4th and 5th requests of
defendants, and in refusing the remaining requests of
defendant. It is submitted said requests each contained in
themselves correct principles of law applicable to their
respective parts of the case as made,' the error being:

"(a) In reference to the eighth ground as assigned and
specified hereinabove.

"(b) In reference to the ninth ground as specified herein-
above and for the further reason that the 1st, 2d, 3d, 4th
and 5th requests of the defendants contained sound proposi-
tions of law which should have been given to the jury in this
case.

XXXI. "His Honor committed error in holding in his
order refusing motion for a new trial that there was some
evidence of conscious failure to observe due care; whereas,
it is respectfully submitted, that the testimony does not tend
to establish such a conclusion of fact.

"In addition to the foregoing exception made on behalf of both defendants, the defendant, Atlantic Coast Line Railroad Company, takes the following exceptions:

XXXII. "The Circuit Judge erred in overruling the motion to direct a verdict so far as that company was concerned for the reason that the testimony shows that although plaintiff at times worked for both roads yet at the time of his injury he was working for the Charleston & Western Carolina Railway Company, upon a car of the Charleston & Western Carolina Railway Company, situated on the siding of the Charleston & Western Carolina Railway Company, and that he was injured by a train of the Charleston & Western Carolina Railway Company, operated by the officials and employees of the Charleston & Western Carolina Railway Company, and that the Atlantic Coast Line Railroad Company had no part or responsibility whatever in the infliction of the alleged injury. to the plaintiff and could in no way be held liable therefor under the pleadings and proof.

XXXIII. "The Circuit Judge erred in refusing the 22d request to charge, viz.: 'I charge you that in this case you cannot find a verdict against the defendant, the Atlantic Coast Line Railroad Company, for the reason that there is no evidence that the injury received was the result of any negligence on the part of that defendant, its officers, agents or employees.' It is submitted there was no evidence that the injury complained of resulted. from any negligence or wrongful act of the Atlantic Coast Line Railroad Company, and that defendant was entitled to have this request charged.

XXXIV. "The Circuit Judge erred in refusing. the motion of the Atlantic Coast Line Railroad Company to set aside the verdict upon the eighth ground of its motion, viz.: '8th. Because there was no evidence to support the verdict so far as the defendant, Atlantic Coast Line Railroad Company, is concerned.' It is submitted there was no evidence to support a verdict against the defendant and, therefore, in the absence of such evidence it was error to refuse to set aside

the verdict as to that defendant. We earnestly submit that the mere fact that two railroad companies at a junctional point at times employ the services of the same employee or employees and arrange between themselves as to the method of payment of his or their wages cannot in law make one of such railroad companies responsible for negligent or wrongful act of the other railroad company to such employee or employees while such employee is working for such other company.

XXXV. "In refusing to set aside the verdict as to the Atlantic Coast Line Railroad Company, the Circuit Judge said: 'Especially does counsel for the A. C. L. R. R. Co. insist that there is no testimony to sustain a verdict against it. * * * The Supreme Court has held that in this case there was some evidence tending to show negligence on the part of defendants.' We submit the Circuit Judge erred in so holding; that he erred in holding that the Supreme Court had done or could do anything more upon the last appeal in this case than pass upon the specific exceptions and questions raised by them; that he erred in holding that the separate nonliability of the A. C. L. R. R. Co. was raised by these exceptions or consequently decided on that appeal; that he erred in holding that the question of the liability of the A. C. L. R. R. Co. on appeal from a nonsuit in one trial can be held as conclusive and decisive of a motion for nonsuit upon a new trial where more or less evidence is or may be introduced; that he erred in holding the question *res adjudicata* when upon a new trial a different question is necessarily presented depending upon the proof offered, and he erred in holding that in this last trial there was any evidence tending to establish liability of the defendant, A. C. L. R. R. Co."

*Messrs. James Peurifoy, W. H. FitzSimons, P. A. Wilcox* and *T. Barron Grier,* for appellants. *Mr. W. Huger*

*FitzSimons* cites: *There was no evidence to establish liability of A. C. L. R. R.:* 82 S. C. 345.

*Mr. F. Barron Grier* cites: *Violating a rule of master is contributory negligence:* 1 Lab. on M. & S. 948; 88 N. W. 976; 70 S. C. 252; 82 S. C. 548; 11 L. R. A. (N. S.) 413; 85 S. C. 471; 3 Elliott, sec. 1282; 12 Am. R. 263; 32 Am. St. R. 391; 90 S. C. 42; 53 So. 550; 19 S. W. 936; 125 S. W. 530; 103 S. W. 424. *Relying on fellow servant to give notice is negligence:* 160 U. S. 438; 1 Am. Neg. R. 503; 11 L. R. A. (N. S.) 416. *Court should define negligence:* 1 Thomp. on Neg., sec. 1; 61 S. C. 487; 25 S. C. 24; 60 S. C. 168; 87 S. C. 193. *Obeying the representative of the master does not relieve of consequences of disregarding rules:* 9 C. C. A. 27; 12 C. C. A. 596; 11 Ind. 212; 118 Ind. 578; 76 Tex. 636. *Question not supported by any evidence should not be sent to the jury:* 1 Lab. on M. & S. 516; 3 Elliott 690; 82 S. C. 550. *When servant may disobey rule:* 82 S. C. 550. *Presence of master does not change rule:* 45 Pac. 384; 11 Ohio C. C. 553.

*Messrs. Holman & Baker* and *Howell & Gruber,* contra. *Messrs. Howell & Gruber* cite: *Duty of servant in emergency:* 68 S. C. 55; 82 S. C. 542; 73 S. C. 481; 21 Am. & Eng. R. R. Cas. 509. *Both roads are liable:* 25 Am. & Eng. R. R. Cas. 446; 31 N. E. 413; 2 Wood on R. R., Minors' Ed. 1558. *Definition of contributory negligence:* 64 S. C. 113; 65 S. C. 194.

*Mr. W. A. Holman* cites: *The law of fellow servant does not apply between the conductor and plaintiff:* 61 S. C. 479. *Whether plaintiff could have complied with the rule is for the jury:* 68 S. C. 56. *If there was evidence of wilfulness that issue should have gone to the jury:* 85 S. C. 463.

October 2, 1912. The opinion of the Court was delivered by

MR. JUSTICE WATTS.  This was an action by plaintiff against defendant for personal injuries received, while he was engaged at work, as car repairer in the employ of defendants at Yemassee, South Carolina, on May 25, 1907.

The cause was first tried, in March, 1911, before Judge Ernest Gary and resulted in a nonsuit.  Plaintiff appealed, and the judgment of the Circuit Court was reversed and a new trial ordered.  The case is reported in 89 S. C. 525. The cause was then tried before Hon. Thos. S. Sease and a jury, at the November term, 1911, and resulted in a verdict in favor of the plaintiff against the defendants for the sum of thirteen thousand ˜($13,000) dollars actual damages. At the close of plaintiff's testimony, defendants made a motion for a *nonsuit,* on the grounds which are set out in the "Case," and which should be reported in the case.  This motion was refused at the conclusion of the testimony of both plaintiff and defendants.  The defendants made a motion to direct a verdict on grounds that should be reported in the case and which was refused by the Court. After verdict, motion for a new trial was made and overruled.  Defendants then appealed and by thirty-five exceptions allege error on the part of the trial Judge.  These exceptions should be set out in the report of the case and may be divided into three (3) heads.  First. In refusing to direct a verdict and to grant a new trial on the ground that the evidence showed plaintiff's negligence was the sole cause of his injury or that plaintiff was guilty of contributory negligence, or that he was injured through the negligence of a fellow servant.

Second. Error in the Judge's charge, in charging certain propositions of law and in refusing to charge certain propositions of law as requested.

The exceptions of the defendant, Atlantic Coast Line Railroad Company, which are 32, 33, 34 and 35, raise the exceptions that the testimony nowhere shows any liability on their part for any injury inflicted on the plaintiff.

The law is so well settled in this State, at least, that where there is any testimony at all or where more than one inference can be drawn that the case must go to the jury to be determined by them, and to grant a *nonsuit* or direct a verdict under such a state of facts would be error, that no citation of authority is necessary. In the former appeal in this case, in 89 S. C. 529, this Court held in reference to the negligence of the plaintiff: "There was no conclusive evidence that the blue flags were not used on this occasion, but, even if there had been, we are unable to agree that a *nonsuit* was proper without allowing the plaintiff to testify as to the condition of the flags furnished him, for it might have appeared that they were so broken as to be useless, and that he was unable to procure others, etc., etc. We think the evidence required that these issues and the issue of contributory negligence growing out of the rule requiring the use of a blue flag should be submitted to the jury."

The rule, No. 989, introduced in evidence, provides: "They will make no inspection or repairs to cars, either in trains or where liable to be moved except under the protection of the signal prescribed in Rule 26." Rule 26 is the blue flag rule, and requires that the workmen shall display a blue flag by day and a blue light at night, and that when a car is thus protected it must not be coupled to or moved. The same workmen who place the flag are alone authorized to remove it. Other cars are not allowed to be placed on the same track so as to obstruct the view of the blue signal without first notifying the workman.

It seems to us, that there was sufficient testimony in this case to carry the case to the jury as to whether or not it was practicable for the plaintiff to obtain a blue flag and whether or not at that time he was directed by a superior officer to proceed with the work, knowing he had no flag, and, inasmuch, as the object of the blue flag is to give notice and warning to the trains, and if Conductor Partain had actual

notice that plaintiff was under this car, and with such notice, ran back against the car and caused his injuries, then the company would be liable.

There was testimony that the plaintiff was 19 years old and had been in the employ of the company about two months and knew the rules in reference to the blue flag. That previous to the occasion of his injury, flags, six in number, had been furnished by the defendant, Atlantic Coast Line Railroad Company, to the workman and while repairing a car ten or fifteen days before the injury, with two flags displayed as required by rule of the company, a train was run against the car and one of the flags broken and torn to pieces and the other carried away and never seen by plaintiff afterwards. Two days before the injury to plaintiff, while at work with both flags displayed, he was again run into and both flags broken and he narrowly escaped serious injury on that occasion. His request to the chief car inspector to report the conductor for this was refused. Shortly before plaintiff's injury, he was again run into while at work and the remaining two flags broken. There being no flags at all and Rabb having full knowledge of this directed the plaintiff on the morning of the injury to repair a car on the siding. At that time, there was one train on the yard, a local freight, in charge of Conductor Partain. This train was on the main line, headed for Augusta, then taking water at the tank. Plaintiff, before going to work, told Conductor Partain what he was about to do. The following is the testimony: "After receiving instructions from Mr. Rabb to repair this car, what did you do next? I met the conductor going to the car. How did you happen to meet him? I went down the yard to inspect a car after Mr. Rabb sent me to inspect this one, just a minute, and came back. On my way back to get the tools, I met this conductor as he was going to his train to take it to opposite side of main line. I went over and inspected that car and came straight back to Mr. Rabb to get the tools

and get Mr. Freeman to help me with this car, and on my way back to the shanty, I met the conductor at about half way between the car and the depot and told him that I had this car to repair and told him what place, and all about the car, showed him the car."

Before going to work on this car there is evidence to show that the plaintiff placed Freeman, a repairer, to watch for other trains. We find the following testimony: "Did you put out the flag? We had none to put out. I asked you if you put it out. No, sir. When Freeman came out, you went under? Yes, sir. What did you ask him to do for you? I asked him to look out and see if any other trains arrived on the yard he could give the alarm."

Later, we find: "In going to work under the car, had you no blue flag to display? No, sir. What did you rely on for your protection? What I relied on was the conversation I had with the conductor, relying on his not coming back in there. I merely put Mr. Freeman back, you might say, as a second precaution, mostly against other trains that might come in, extras."

Here, we have evidence that plaintiff, notwithstanding the rule requiring the use of flags for his protection, had used them on three different occasions and narrowly escaped death or serious injury, previous to his injury. The flags had failed to accomplish the purpose they were intended to serve and had been destroyed. There was none on hand to use at the time he was actually injured, and he took the extra precaution to notify and warn the conductor of the only train there that he was going to inspect the car and pointed out to the conductor the particular car he intended to inspect, and put out a person to watch for, and warn him against other trains and went to inspect the car under orders of his superior, who was present and gave the orders to him. It was clearly competent for the jury to determine under all of the evidence and circumstances of the case, whether it was

the negligence of the defendants which was the proximate cause of plaintiff's injury and whether he, by his acts, was in any manner negligent and contributed to the proximate cause of his injury.   It was also for the jury to say, under the testimony as given, whether there was wantonness or a conscious advertent failure on the part of Conductor Partain to observe due care under the particular circumstances of the case.   Could the placing of the blue flag have told the conductor more than what the plaintiff had told him? Plaintiff had given him explicit notice of what he intended to do and in less than ten minutes after the notice, the conductor, without any notice to plaintiff, ran his car into him and caused the injuries complained of.   Plaintiff not only gave notice to the conductor as to what he intended to do, pointing out the car, but was assured by the conductor that he was going to pull out for Augusta and plaintiff could safely go to work on the car without molestation.   Whether the work to be done was an emergency case was for the jury.   There was evidence that it was broken down and plaintiff was ordered to repair it by his superior, who had the right to give the order.   It was his duty to obey.   There is testimony that the superior knew the work would be done without the flags, and that plaintiff had made an effort to obtain flags and failed.   That he had called for locks to lock switches and failed to get them.

"If a master or superior orders an inferior into a situation of danger, the law will not charge him with assumption of risk unless the danger is so glaring that no prudent man would have entered into it."   14 Eng. Law 357, cited and approved in *Mew* v. *Railway Co.,* 55 S. C. 102.   "Whether the matter of assumption of risk by an employee is to be tested by the law of waiver, *Hooper* v. *R. R.,* 21 S. C., 541, or the law of negligence, *Bussey* v. *R. R.,* 52 S. C. 438, 30 S. E. 477, is a question of fact for the jury."   *Mew* v. *Railway Co.,* 55 S. C. 103, 32 S. E. 828.

His Honor committed no error in refusing the motion made by the defendants for a nonsuit or to direct a verdict, and the exceptions raising these questions are overruled.

As to the second group of exceptions, which allege error in the Judge's charge, a careful reading of the exceptions and the Judge's charge as a whole, will show that he has committed no error. Every question raised by these exceptions was virtually raised and decided in the case of *Carson* v. *Southern Railway Company,* 68 S. C. 55, 46 S. E. 525, in the full, elaborate and able opinion of Chief Justice Pope, and reaffirmed in the cases of *Wilson* v. *Railroad,* 73 S. C. 481, 53 S. E. 958; *Stevens* v. *Railroad,* 82 S. C. 542, 64 S. E. 601.

In the case of *Moore* v. *St. Louis & P. R. R. Company* (Missouri), 21 Am. & Eng. R. R. Cases 509, the pleadings and facts of that case show that it was a case very similar to the case at bar. Dealing with the legal principles involved, the Court, at pages 513-514, say: "The defendant's refused instructions asserted the following general propositions, viz.: That although plaintiff and Kestler were not fellow servants, Kestler was not authorized by the company to make the promise alleged to protect plaintiff while under the car, and that notwithstanding such a promise yet plaintiff could not recover if he failed to set out the red flag, as required by the rule, or to set some one to watch for the approach of engines and trains.

"It being conceded, as it must be, that the company owed a duty to the men under the car to provide for their safety, can it be that the foreman had no authority in an emergency to use any other means than those adopted by the company —that the red flag, and nothing but the red flag, was the means he was to employ? If for any reason that would clearly, in a given case, have been insufficient as a warning, can it be possible that the foreman would be restricted to the use of red flags? Or, if in such case he had had the red flag set up, and one of the men was injured in consequence

of its insufficiency to give the warning, that the company would not be liable to the injured party?

"Has it discharged its duty by simply adopting a means of protection ordinarily sufficient when the person in charge of the work knows that in the particular case it is not a sufficient warning?

"If the foreman has authority in such an emergency, that authority results from his general authority to perform the duty of the company in protecting the employees under his control in the performance of a dangerous work for the company, and he was authorized to make the promise to plaintiff for the company, and undertook to set out the red flag in his possession, or to adopt any other means necessary to secure the safety of the men, thereby absolving them from the duty of setting out the flag or setting the watch. As to the latter, there was no proof of a rule requiring one man to watch while the others worked; and it was in the proof that while the work in question could possibly have been done by one man, it could not be conveniently or promptly done by less than two. It being the duty of the company to provide for the safety of the men while engaged in its dangerous service, if it delegates such authority as to the employment of men and their control and management to an agent, will the law, in the absence of an express stipulation to that effect, declare that such agent is under no obligation and has no power, as the representative of the company, to provide means for the safety of servants whom he sends in a place of danger to work?

"If so the duty of the company to provide such security may be easily evaded by having no one on hand to perform it. And by simply adopting reasonable rules, the observance of which will ordinarily afford protection, although in a given instance the observance of such regulation would afford no protection whatever, and the person representing the company in the direction of the work and the control

of the hands knew the fact, such abdication of duty can certainly find no support either in reason or authority."

As to the contention that the injury was the result of the combined contributory negligence of the plaintiff and the negligence of a fellow servant, Freeman, this Court, in the former decision in this case, said: "If the negligence of Freeman, the fellow servant, was the sole proximate cause, or one of the proximate causes, the negligence of the plaintiff being the other, then the plaintiff could not recover, but if the proximate cause of the injury was the negligence of the defendants combined with the negligence of Freeman, the fellow servant, the plaintiff would not be precluded from recovery. *Elms* v. *Sou. Power Co.,* 79 S. C. 502, 60 S. E. 1110; *Roberts* v. *Virginia C. C. Co.,* 84 S. C. 283; 66 S. E. 298. We think the evidence required that these issues and the issues of contributory negligence growing out of the rule requiring the use of a blue flag should be submitted to the jury."

It will be seen that it was decided in this case, reaffirming the rule as laid down in *Elms* v. *Sou. Power Co.,* 79 S. C. 502, 60 S. E. 1110, and a long line of decisions, that the plaintiff would not be precluded in recovering if the defendants were negligent, because of the negligence of plaintiff's fellow servant, Freeman, if the negligence of the master, the defendants, combined and commingled with the negligence of such fellow servant. In order to escape liability on the ground of negligence of a fellow servant, it must appear that the master was not negligent at all as to any of the proximate causes of plaintiff's injury. It was for the jury to say under the evidence and what weight it would give to it that the act of the conductor in running his train back and striking the cars on the siding under the circumstances was negligence or not on the part of the defendants.

There was ample testimony to go to the jury on the question of waiver of the blue flag rule, and we will not further

discuss the testimony on this line, being content with what has already been said in reference to why they were not used on this occasion. As to these exceptions in reference to the Judge's charge the exceptions are overruled.

As to exceptions 32, 33, 34 and 35, which are the exceptions of the defendant, Atlantic Coast Line Railroad Company, that there is no evidence to sustain the verdict against it on any view of the facts proved, the evidence conclusively shows that both of the defendants, at the time of plaintiff's injury, owned and jointly operated the yard at Yemassee, South Carolina, a station on the line of both defendant roads, and that plaintiff was employed by both of the defendants to work as car repairer in their yard at Yemassee. There was evidence to show that he was paid by the Atlantic Coast Line Railroad Company; that the flags were furnished by this defendant, through Rabb, the chief car inspector, under whom plaintiff worked. It was not for plaintiff to inquire which road he was working for. It was his duty to obey the reasonable orders given him by his superior in the due course and within the scope of his employment, and he had every reason to assume that his superior would not require him to work for a road that it was not his duty to work for, and it was not expected of him to ascertain whether he was working for one or both roads when he was directed by his superior to work. Under the peculiar facts of the case, it would be difficult for him to determine when he ceased to become the servant of one road and become the servant of the other. As to that, possibly some of the higher officials of the two roads knew what the agreement in reference to this was, but that secret was locked up with them and maybe would not be made known until it was to their interest to divulge it. He took the situation as he found it and obeyed the orders of his superior.

There was some evidence to show that both roads, by some agreement among themselves, jointly used this union

36—92

yard at Yemassee, and there was sufficient evidence to infer that each furnished their proportionate share of machinery and men necessary to operate the same, and if plaintiff was entitled to recover he had the right to recover against one or both and they can settle among themselves according to their agreement, if they have any. With that plaintiff is not concerned. This view is sustained by the cases of *Gulf C. & S. R. R. Co.* v. *Dorsey* (Texas), 25 Am. & Eng. R. R. Cases 446; *Vary* v. *Railroad Co.,* 42 Iowa 246; *Wisconsin Railroad* v. *Ross,* 31 N. E. 413; 2 Wood on Railroads, Minors' Edition, 1558. These exceptions are overruled.

As to the exceptions that his Honor was in error in submitting to the jury the question of punitive damages: His Honor instructed the jury that they were to find, if at all, separately, the actual and punitive damages and they only found actual damages. So it is immaterial now, whether he was in error in submitting this question or not and this exception is overruled.

After a careful consideration of all the exceptions, it is the judgment of this Court that the exceptions be overruled.

Judgment affirmed.

MESSRS. CHIEF JUSTICE GARY *and* JUSTICE HYDRICK *concur.*

MESSRS. JUSTICES WOODS *and* FRASER *concur in the result.*

MR. JUSTICE WOODS *concurring in the result.*

The rules of the railroad company required car repairers, before working under cars, to put out blue flags to warn those operating trains not to run on them. The Court held on the former appeal: "If the plaintiff proved that he did disregard such a rule, known to him to be in force and so essential to his own safety as well as the safety of other employees

and the general public, when he could have complied with it by reasonable effort on his part, and thus prevented the injury, then the nonsuit was proper. The plaintiff could not excuse his disregard of the rule on the ground that he chose to adopt the substitute of telling the conductor of the train that he was going under the car and getting his promise not to run on him." It concerns the public safety that Courts should not sanction the attempts of employees of railroad companies to waive or disregard any of the rules adopted for the protection from injury of the employees themselves, as well as passengers. *Stephens* v. *Southern Ry.*, 82 S. C. 319, 64 S. E. 601. Disobedience of rules by a servant which, combined with the negligence of the master proximately causes him injury, will generally be held by the Courts to be contributory negligence as a matter of law. *Mills* v. *Railroad Co.*, 85 S. C. 463, 67 S. E. 565. This doctrine was distinctly stated in the charge, but with the correct limitation that contributory negligence of the plaintiff would not avail the defendant if the act of those in charge of the moving train, in striking the car under which the plaintiff was working, was wanton and reckless.

But I think there was some evidence that the defendant did not have blue flags for plaintiff's use and that he was, therefore, not negligent in failing to use them. For these reasons I think there was no error in refusing a nonsuit for contributory negligence, and that there was no error in the charge.

I concur in the conclusion of Mr. Justice Watts that there was evidence to go to the jury on the issue of the joint liability of the Atlantic Coast Line Railroad Company and the Charleston & Western Carolina Railway Company.