13067

DAWSON v. GLUCK MILLS

(157 S. E., 143)

June, 1930.

*Mr. G. Cullen Sullivan,* for appellant,

*Mr. A. H. Dagnall,* for respondent,

February 11, 1931.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action for damages for personal injuries. The complaint alleges that on or about September 18, 1929, and for a short time prior thereto, the plaintiff, an infant of seventeen years and practically without experience, was in the employ of the defendant as a "helper to a man who was overhauling  *   *   *   the combers" in its cardroom; that at the head of a comber, and a part of same are two pulleys, one known as the "tight" and the other as the "loose" pulley; that there extends from an overhead pulley, attached to a driving shaft, a belt connecting the shaft with the pulleys on the comber, by which power is transmitted to the pulleys below; that, when the belt is on the "tight" pulley, the machine is in operation, but, when it is on the "loose" pulley, the comber is at a standstill, although the belt may be in motion; that on the day named defendant ordered the plaintiff to place his hands on the flange of the "tight" pulley at the head of the comber on which work was being done, and to turn the flange to the right or to the left at a signal from the person adjusting the comber; that, while plaintiff was turning the flange to the left as signalled, the belt, which was then in rapid motion on the "loose" pulley, knocked his right hand and arm into the side of the machine, and held them against it in a vise-like grip, severing the tendons and muscles, and severely burning and tearing the flesh from his arm.

He alleges that such injuries were caused by the negligence and willfulness of the defendant in the following particulars:

"In failing to provide a safe place for plaintiff doing necessary work; in not warning and instructing plaintiff, an infant of tender years, and without experience, of the danger of the work and the danger of turning and moving the flange or rim of the 'tight' pulley on the comber while the belt was in rapid motion on the 'loose' pulley; in requiring and putting plaintiff, an inexperienced infant, at dangerous work at and near dangerous machinery in operation without warning and without instruction; in requiring, allowing and permitting plaintiff, an inexperienced infant, to work in close proximity to a rapidly moving belt on the 'loose' pulley of the comber; in not removing the belt from the 'loose' pulley of the comber while plaintiff was at work in close proximity thereto; in failing to provide and enforce reasonably safe and proper rules, means and methods for the performance of the work required of plaintiff; in not having the rapidly moving belt on the 'loose' pulley properly equipped with guards so that said belt would not injure plaintiff while he was performing the duties required of him, by reason of all and each of which negligent acts of defendant as aforesaid, plaintiff was injured as aforesaid."

The defense was a general denial, contributory negligence, and assumption of risk. The jury found for the plaintiff $3,100.00 actual damages. Defendant appeals from the refusal of the trial Judge to grant its motion for a nonsuit.

The first ground of the motion was that there was "no testimony to show that the defendant was guilty of any actionable negligence which was the proximate cause of the injury."

In *Lyon v. Railway*, 77 S. C., 328, 58 S. E., 12, 18, it was said: "There are strong reasons for the great caution which this Court has always exercised in the use of its power to reverse a judgment of the Circuit Court refusing a nonsuit or a new trial, or the direction of a verdict, on the

ground that the evidence admits no other inference than that there has been a complete failure of proof to make out the plaintiff's alleged cause of action, or that there has been complete proof by the plaintiff of a defense set up in the answer."

"A case should be submitted to the jury, not only when the testimony is conflicting, but likewise where the inferences from it are in doubt." *Keistler v. Insurance Co.,* 124 S. C., 32, 117 S. E., 70, 72.

The plaintiff testified that, while he had worked in a mill in North Carolina for a short time, and had also worked occasionally in defendant's mill, he knew nothing whatever about combers or other machinery; that, at the time of his injury, he had been working in defendant's cardroom about seven or eight days; that he was assigned to work under McNeil, an expert machinist, who was overhauling the combers, and was instructed to do everything that McNeil told him to do; that he was just a "handy boy," carrying out McNeil's orders in the way of handing him tools, etc., that on the morning of September 18, 1929, McNeil told him "to go to the head of the machine and turn the tight pulley like he had done, turning it as he signalled, to the left or to the right"; that McNeil signalled him to turn it to the left, and he caught the flange of the tight pulley just as he had seen McNeil do; that he pulled on it "real hard," as it required nearly all of his strength to turn it and that "it kind of jumped and the belt hit my arm and knocked it down between the belt and the pulley," with the result that his arm was fearfully injured; that he did not know that one could stand to the right of the machine and turn the pulley; that neither McNeil nor any one else gave him any instructions about the danger of turning the head of the comber, and that he did not notice the belt which was on the loose pulley or that it was running; that this belt was about four inches wide, and its two sides were about ten or twelve inches apart; that he did not know how to take off or put on the belt or how to stop the motor, nor did he know that the

pulley would "jump" when turned; that at the time he was injured he was not yet eighteen years old.

Carl Ripley, a witness for the plaintiff, testified that he had worked in the cardroom of the defendant on the combers; that a comber is hard to turn, and takes a great deal of strength, as it is sometimes easy in one place and hard in another.

Homer Moore also testified that he had worked in the cardroom of the defendant; that it is dangerous and difficult to take off or put on the belt while the motor is running, and that no one is allowed to do this except section men, second hands, and overseers; that in his opinion one could not stand at the side of the comber and turn the "tight" pulley.

It is clear that the testimony made a question of fact for the jury as to the negligence of the defendant. The plaintiff was young and without experience in the work assigned him, and knew nothing of the machinery; no warnings or instructions as to the danger were given him. He was expressly ordered by the master to go to the head of the comber and turn the tight pulley, the very act in which he was engaged when injured. The master knew, or should have known, the danger of the situation in which he had placed the servant to work. The Court could not say, as a matter of law, that the evidence admitted of no other inference than that there had been a complete failure of proof of plaintiff's case.

The motion for a nonsuit was based on the further ground that the only reasonable inference from the testimony was that "plaintiff assumed the risk and danger incident to the work in which he was engaged at the time of the injury."

In *Barnhill v. Manufacturing Co.,* 112 S. C., 541, 100 S. E., 151, 152, the Court said:

"Where the master's fault is the cause of injury to his servant, he is *prima facie* liable, and if he would relieve

himself of the consequences, on the ground that the servant assumed the risk, he must show, not only that the servant knew the danger, or that it was so obvious that he should have known it, but also that he comprehended or appreciated it."

We do not think that the defendant was entitled to a nonsuit on this ground, as there was testimony tending to show that the plaintiff did not comprehend or appreciate the danger of the work which he had been directed by the master to do. Assumption of risk is ordinarily a question for the jury (*Gowns v. Watts Mill*, 135 S. C., 163, 133 S. E., 550), and, under the testimony in this case, was properly submitted to them.

The third ground upon which the defendant asked for a nonsuit was that the plaintiff was guilty of contributory negligence.

In the case of *Stephens v. Railway*, 82 S. C., 542, 64 S. E., 601, 604, the Court said:

"To show contributory negligence, it is not sufficient that the employee receiving the order should have misgivings and believe the act required to be hazardous, unless the danger is so imminent and obvious that a man of ordinary prudence would not incur it. If there is ground for reasonable difference of opinion as to the danger, the servant is not bound to set up his judgment against that of his superior, whose orders he is required to obey; but he may rely on the judgment of such superior. The matter is thus well stated by Mr. Justice Holmes in *McKee v. Tourtellotte*, 167 Mass., 68, 44 N. E., 1071, 1072, 48 L. R. A., 542: 'When we say that a man appreciates a danger, we mean to say that he forms a judgment as to the future, and that his judgment is right; but if against this judgment is set the judgment of a superior, one to whom, from the nature of the callings of the two men and of the superior's duty, seems likely to make the more accurate forecast, and if to this be added a command to go on with the work and to run the risk, it becomes

a complex question of the particular circumstances whether the inferior is not justified as a prudent man in surrendering his own opinion and obeying the command. The nature and degree of the danger, the extent of plaintiff's appreciation of it, and the exigency of the work, all enter into consideration, and no universal rule can be laid down.' The numerous authorities sustaining this statement of the law are collated in the note in *Houston, etc., Ry. Co. v. De Walt,* 97 Am. St. Rep., 877."

In the case at bar, there was testimony tending to show that the plaintiff did not know of any way to do what he was ordered to do except the way he did it, that he was young and inexperienced, and that there was no good reason for his setting up his judgment against that of the master as to doing what the master directed him to do, or as to the manner in which it should be done. Certainly the Court could not decide the question, as the evidence was susceptible of more than one inference.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES COTHRAN and CARTER and MR. ACTING ASSOCIATE JUSTICE JOHN I. COSGROVE concur.